STATE, Plaintiff, v. SILBERBERG, Defendant.

STATE, Plaintiff, v. SILBERBERG et, Defendants.

Common Pleas Court, Cuyahoga County.

Nos. 64412, 64414.

450

Fred Frey, Asst. Prosecuting Atty., Cleveland, for State.

Peter E. Klein, Hon. Neil W. McGill, Morris Benik, Cleveland, for defendant.

## OPINION
## STATEMENT OF CASE

By FULTON, J.

These two cases based on criminal indictments were heard together. The first case, No. 64412, embraces two counts based upon the the Ohio Securities Act against Silberberg only. Count One alleges a prohibited sale of an alleged security which was not registered or qualified, not exempted, and which was not the subject matter of a transaction exempted by law. Count Two alleges that Silberberg made the sale of the alleged security described in Count One when he, Silberberg, was not licensed to make such sale.

It is clear that both counts in Case No. 64412 arise from the same transaction.

The second case, No. 64414, embraces six counts based upon the same laws against Silberberg and the Euclid Green Development Company of which the latter, Silberberg, is president, a director, and manager. These two defendants are charged in each of three counts with selling a non-registered, non-qualified, non-exempted alleged security and which sale was in no wise the subject matter of an exempted transaction under the law. In each of the three counts it is charged that Silberberg, and the corporation were not licensed by law to sell these alleged securities.

The counts in Case No. 64414 are in couplets. One in each couplet of counts charges that an alleged security was sold and the other in each couplet of counts charges that neither Silberberg nor the corporation were licensed under the law to sell these alleged securities.

It is clear that each couplet of counts arises from the same transaction.

The instruments or documents in both cases are alike and similar. They are not, however, precisely identical.

Generally speaking, the instruments are contracts to sell or convey an undivided interest in real estate improved by resident structures; and these resident structures are divided into living suites, either vertical

(terrace-like) or horizontal (apartment-like). However these instruments or documents provide not only for the sales and conveyances aforesaid—but "plus". In these instruments the defendants are the vendors (lessors or what-not); and the other parties are the vendees (lessess or what-not).

The "plus", advocates the prosecution, makes these instruments securities under the Ohio Securities Act. The "plus", asserts the defense, in no wise impeaches the purity and simplicity of, nor changes the character of them from remaining, land contracts.

The defense says that fraud is the important and **only** factor in prosecution under the Ohio Securities Law. On the other hand the prosecution claims the tests to be (a) Are the instruments securities, (b) Are they registered or qualified or do they arise from an exempt transaction, and **if not** (c) Are the defendants licensed to sell them.

## STATEMENT OF COURT'S VIEWS

### I

These instruments are not pure and simple land contracts either to sell or to lease an undivided or aliquot portion of land, or a specific portion thereof. They purport (1) to sell an undivided or aliquot portion of real estate and (2) to permit occupancy by the vendee of a specific portion. They contain a provision for conveyance to the vendee of an undivided portion of the real estate when the payment conditions are met by the vendee and at that time **impliedly** (not expressly) permit occupancy of a specific portion thereafter by the vendee. They provide for interim reservation to vendor, as if he were only a lessor, to furnish "water, heat, and other expenses in connection with the building" as well as "taxes, assessments and insurance"—all payable however with vendees' funds.

The foregoing indicates that the documents or instruments are not **simple** land contracts.

Then there are incorporated provisions which clearly demonstrate the instruments are not **pure** land contracts for the ultimate direct conveyance of a fee or leasehold interest. Some of these are now summarized (It should be noted that the scrivener made no distinction between the words "shall" and "will".)

(a) A provision that the vendor shall create a corporation and distribute its shares.

"It is understood and agreed that the party of the first part shall incorporate a corporation as its own expense on or before June 1, 1959, capitalize at the sale price of said land and building thereon and to issue shares in said corporation in proportion to the value of the interest purchased by the party of the second part."

(b) A provision that the vendee will convey his premises to this corporation by warranty deed—presumably if the vendee by that time shall have paid the full consideration price.

"It is understood and agreed that when said corporation has been duly formed, that the present owner will transfer by Warranty Deed with title guarantee at his own expense, all his right, title and interest, including the releasing of any dower right in said property to the said corporation: that taxes and assessments and insurance will be prorated as of the day of transfer to the corporation."

(c) A provision which specifically states that the distribution of the shares of stock in such corporation are deliverable "when the principal sum, deposit, payments and all and any other conditions of this contract have been fully complied with and payment of the same has been made in full."

(d) Varying provisions that such organized corporation should be "profit" and as Silberberg stated should be "non-profit"; that the corporation should be turned over to the particular vendee designated in the contract; and some to vendee and others.

(e) A provision that "control and use of deposit monies is absolute in the vendor" and that vendor's "accounting will be final."

These documents are not land contracts—either pure or simple. These documents are of a promissory nature and to the extent that they provide for the creation of a corporation and the issuance of its shares to the vendees, constitute securities. In one contract it was provided that after the vendee had reconveyed his title to an undivided interest in the real estate for which he had paid in full and by reason of which he received these shares of stock, the vendee should receive a 99-year lease to the specific suite or apartment occupied.

The court finds that these documents are securities within the intendment and contemplation of the Ohio Securities Law.

## II

These securities as hereinbefore defined were not registered either by description or by qualification as by law required and the transaction through which these securities (so-called land contract) were issued were neither registered nor exempted by law. Nor were these securities exempted under the securities statutes. See §§1707.01 to 1707.99 R. C., and especially §1707.02 (G to I inclusive) R. C.; §1707.03 (B to L inclusive and P & Q) R. C.; §1707.04 R. C.; §§1707.06 and 1707.34 R. C. The foregoing sections relate to registered securities and exempted securities and exempted transactions and are referred to in §1707.44 R. C., which is, according to §1707.99 R. C., the foundation underlying and the framework for these indictments.

## III

The court was a little troubled about the applicability of §1707.03 K-3 R. C., which is one of the sections describing an exempt transaction. K-3 describes and defines "the sale of pre-organization subscriptions for shares of stock of a corporation prior to the incorporation thereof" as "exempt" provided "such sale is evidenced by a written agreement. no remuneration is given, or promised directly or indirectly, for or in connection with the sale of such securities, and no consideration is received directly or indirectly by any person from the purchasers of such securities until registration * * *."

However it is obvious that the consideration in dollars for the acquistion of the undivided interest in the real estate supports all of the promises and obligations made and to be performed by the vendor. Were this not so each and every provision beyond the purchase of the interest in the real estate by the land contract would be "nudum pactum."

In consequence, therefore, if one considers the proposed sale or transfer of shares in the contemplated corporation as the equivalent of "pre-

organization subscriptions" the conclusion is irresistible that the paper writing or instruments in this case provide for "renumeration" and "consideration" for their proposed issuance. They do not therefore fall within the definition of an exempt transaction.

## IV

Secs. 1707.14 through 1707.19 R. C., relate to licensure and by reference through §1707.99 and §1707.44 R. C., also specifically underly the non-license counts of these indictments.

The defendants in these indictments did not comply with these provisions respecting licensure. They were not licensed to sell securities under the law.

## V

Defense counsel suggested reliance upon "L" of §1707.03 R. C., (exempt transactions). That provision reads "the issuance of securities in exchange for * * * outstanding securities, claims, or property interests * * * " Here the defense was faced with a dilemma. It was necessary to reverse the reading and meaning of "L" by looking to the time when the shares of stock in the corporation would be issued to the vendees named in these documents in exchange for their property interests, rather than the exchange of the so-called land contract for the interest derived through them for the proposed future corporate stock issue. This argument compelled them to embrace the viewpoint that the shares of stock are securities.

There can be no doubt that the "issuance of securities" in "L" means the present interest "in exchange for * * * outstanding securities, claims or property interest * * *." It does not and cannot mean a contemplated uncertain, possible, probable or even a certain future issue.

## VI

The only tests of penal responsibility are whether the securities are exempt or registered or are issued out of an exempt transaction and whether those who sell the securities are licensed so to do. Intent in the ordinary sense of criminal law is not an essential element. The intent is either non-existence or inheres in and flows from the prohibited acts. What the law prohibits is that "no person * * * shall knowingly engage in any act or practice" prohibited by §1707.01 to §1707.45 R. C. (See §1707.44 G R. C.)

Sec. 1707.29 R. C., provides that "The accused shall be deemed to have had knowledge of any matter of fact, where in the exercise of reasonable diligence he should, prior to the alleged commission of the offense in question, have secured such knowledge." Here Silberberg, upon learning, by rumor, of the viewpoint of the Securities Division with regard to the proposed corporation and its shares distribution, struck out those paragraphs and obtained the signature of Mr. and Mrs. Matthew (State's Exhibit 31—similar offense).

## VII

Although §1707.45 R. C., places the burden of proof upon the defendant to show his entitlement to the benefits under any of the sections of the law, this court reads that provision in contest. The same section provides that the indictment need not negative the facts of registration or exemption respecting either securities or the transactions through which

the securities are issued. This court concludes that while the burden is upon the defense in this case to explain that these documents do not fall without the embracement of the Securities law, there still remains with the State the burden of proof beyond a reasonable doubt that defendants committed offenses.

Upon all of the evidence the court is convinced to a moral certainty of the truth of the charges made in these indictments, even though (a) the burden of proof of guilt is placed on the State, and (b) these securities sections must be strictly construed because (1) they are penal in nature, and (2) in derogation of the common law rule of "caveat emptor"

## VIII

The defense argued vehemently that the purpose of the Ohio Securities Law like that of the S. E. C. is to prevent frauds. S. E. C. v. Joiner, 320 U. S. 344, 353. That is unquestionably true. In addition to that laudable purpose the Ohio Securities Law has set forth prescribed violations. These violations such as the sale of securities without a license may exist even though no fraud is perpetrated, just as by analogy one may be found guilty of using the mails to defraud in violation of U. S. Statutes even though no one is defrauded. (Even a casual analysis of the ultimate possibilites which might confront the vendees in these transactions reveals the potentiality of fraud—if that were the basis for adjudication here.)

The principle pronounced by the Court of Appeals for the 8th District in **Commercial Bank and Trust Company v. Doyle, 13 Abs 354** aptly applies. There in an opinion by Judge Leighley, the judgment based upon which was concurred in by Judges Levine and Weygandt, it was written that the Ohio Securities Act "punishes persons that do not comply therewith" even though that same act "does not render void" the sale or act of which the seller violated the law. That case dealt with the sale of real estate. (Real estate and its handling has from time to time challenged the legislature.)

This court is not impressed by. nor is it required to be controlled by, the decision of the Appellate Court of Illinois in the case of Brothers v. McMahon, 351 Illinois Appeals 321, 115 N. E. 2d Series 116. That case was a civil action. It was based upon the Illinois and not the Ohio Act. Here we deal with the Ohio act and we are not dealing with the right between the vendor and any of his vendees. We are dealing with the rights between the State of Ohio and the vendors. By analogy deaths from the automobile accidents present instances where the causer of the death may be guilty of manslaughter in a criminal case and not be liable in damages for the death of the deceased.

It is the duty of the court to apply the statutes passed by the legislature because these are the will of the people expressed through their representatives. There are many pieces of legislation with which this writer does not agree. In transactions such as in this case, he belives that the doctrine of "caveat emptor" should apply. He considers that the buyer does not need the protection of laws like the Ohio Securities Law because every man has a constitutional right, or ought to have such constitutional right, to make a fool of himself. However, this judge seems to be out of step with the people who think to the contrary and their will has been expressed through legislation and this court will apply such legislation,

including the penalties thereof since he knows the statutes are valid constitutionally and otherwise.

If the court's viewpoint were followed there would be no Ohio Securities Law and these defendants would not be before this court. There is, however, an Ohio Securities Law and these defendants have been before this court as alleged violators thereof; and from the foregoing findings these laws have been violated and the penalties **must** be applied   One should not give lip service to the wisdom of a statute and then wink at the penalty thereof.

From all of the foregoing the court finds and adjudges the defendant, Hirch Silberberg, guilty of both counts in indictment No. 64412; and finds and adjudges Hirch Silberberg and the Euclid Green Development Company each and both guilty of all six counts of the indictment in Case No. 64414.

The penalties will be given by oral pronouncement.   Exceptions are given all parties.