**STATE, Plaintiff-Appellee, v. HIRSCH, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23557. Decided January 10, 1956.

58

Frank T. Cullitan, Pros. Atty., Frederick W. Frey, Asst. Pros. Atty., for plaintiff-appellee.

Greene & Greene, Lockwood Thompson, for defendant-appellant.

## OPINION

By SKEEL, J:

This appeal comes to this court on questions of law from a judgment and sentence of the defendant, Samuel Hirsch, on the verdict of guilty returned by the jury. The appellant's wife, a co-defendant in the same trial, was found not guilty by the verdict of the jury and discharged.

The defendant, Samuel Hirsch, and his wife, Bess, were indicted for alleged violations of the Blue Sky Law. Mrs. Bess Hirsch was the owner of an eight-suite apartment house located at 1031 Linn Drive, Cleve-

land, Ohio. Mr. Samuel Hirsch is a licensed real estate broker. Through the procurement of Mr. Hirsch, two separate land contracts were entered into between Mrs. Hirsch and two purchasers entitling such purchasers to a fixed percentage undivided interest in the apartment property, the purchase of such interest giving the purchaser the right to occupy a designated suite in the building for residence purposes, including the use of a garage space. The other suites in the building were disposed of in like manner but due to the statute of limitations provisions of the Blue Sky Law, the sales of such suites were not subject to the criminal provisions of the Securities Act, and in the trial of this case the sales of these suites were injected into the trial, the state claiming that such evidence was admissible as similar offenses (similar acts) under the provisions of §2945.59 R. C.

The facts upon which the State seeks to sustain the conviction of the defendant on the four counts of the indictment are not in great dispute.

Bess Hirsch, as owner; sold to Wilma Long and Bunyon Long, mother and son, through the efforts of this defendant-appellant, a four-thirty-eights interest in the apartment house (which contained eight suites) located on Linn Drive as described by metes and bounds in the land contract for $6300, payable $1200 down and the balance payable at the rate of $51.00 per month, which includes six per cent interest on the balance, beginning October 1st, 1953, plus $16.50, as the purchaser's portion of taxes, insurance and building maintenance. The contract was dated September 5, 1953 and provided that the purchaser of such interest had the right to occupy Suite No. 5 with the further provision that:

"It is understood and agreed that four shares of stock will be delivered to the party of the second part when the principal sum will be reduced to two thousand five hundred dollars ($2500). At the time of the delivery of said stock, the party of the second part will execute a note or notes in the sum of twenty-five hundred dollars ($2500) payable in monthly installments of fifty-one dollars ($51.00) each plus sixteen dollars and fifty cents ($16.50) per month for taxes and assessments, maintenance and any other expenses which will be incurred in connection with the maintenance of said building."

The other land contract (procured by the efforts of this appellant), the execution of which by the defendant, Bess Hirsch, is the subject of this indictment, was with Walter and Hazel Venable, husband and wife. This contract is the same in every respect as that entered into with the Longs except that the total consideration was $7,000, the down payment $1500, the interest in the apartment property to be transferred to the purchasers (by warranty deed) was five-thirty-eights, the monthly payments of $55.00, plus $16.50 for taxes and maintenance, the number of shares of stock to be received upon reduction of purchase price to $2800, five, and the suite which the Venables were privileged to occupy was No. 1.

At the time of the indictment neither the Venables nor the Longs had become entitled to the delivery of stock under the terms of the contract. There is no provision in the land contracts defining or in any

fashion describing the corporation, the stock of which was to be delivered under their terms. That is to say there is not a word in either contract as to the capital structure of such corporation, its purposes or any other essential fact about it necessary to make use of provisions of the contract requiring delivery of shares of stock.

The first count of the indictment charges that Bess Hirsch and Samuel Hirsch on or about the fifth day of September, 1953, at the county aforesaid:

"did knowingly, unlawfully and intentionally sell, cause to be sold, offer for sale and cause to be offered for sale to Wilma S. Long and Bunyon Long a security, to-wit, a written instrument and agreement of a promissory nature bearing the title of a 'land contract,' which said instrument provides, in substance and in material part, that the said Bess Hirsch promises and agrees to deliver to said Wilma S. Long and Bunyon Long four shares of stock when the principal sum due and payable from said Wilma S. and Bunyon Long to the said Bess Hirsch according to the terms of said written instrument bearing the title of 'land contract' will be reduced to the sum of two thousand five hundred dollars, which said security, to-wit, said so-called land contract, was not then and there registered by description, nor qualified, nor exempted, nor the subject matter of a transaction then and there registered by description, nor the subject matter of an exempted transaction in accordance with the provisions of the Ohio Securities Act, to-wit, §§1707.01 to 1707.99, inclusive, R. C., and §§8624-1 to 8624-45, inclusive, GC."

The second count describes the same transaction as described in the first count, the charge being that the defendants made a sale of securities coming within the Securities Act without being jointly or severally licensed to sell securities under the Blue Sky law of Ohio (§§1707.01 to 1707.99 R. C.).

The third and fourth counts describe a like transaction entered into the ninth day of February, 1953, between the defendants and Walter Venable and Hazel Venable, husband and wife, and charges like offenses in that a sale of securities, not licensed or exempt under the Ohio Securities Act, was made by the defendants and that the defendants were not licensed to sell securities under the Act.

The evidence shows, and these facts are not controverted by any evidence introduced by the State, that the Longs (mother and son) and the Venables (husband and wife) were not in the security market at the time these transactions were consummated. What they wanted and did purchase was an undivided interest in an apartment building with the absolute right to occupy one of the suites as a home. These two contracts required the seller to give the purchasers warranty deeds when the contracts were fully performed. The only mention of stock in the contracts here, the basis of these indictments, was as above quoted except that at the end of the Venable contract are the words "shares of stock according to contract." There is some evidence of verbal discussions with some of the purchasers of the suites, other than those which are the subject of these indictments, with regard to organizing a corporation whereby the suite owners would have their interest in the

building represented by shares of stock in a corporation to which the title of the apartment building would be deeded. This idea has some support from the evidence which is to the effect that the building had eight suites with a total of thirty-eight rooms and the number of shares mentioned in the eight contracts introduced in evidence equalled the total number of rooms in the suites purchased, that is thirty-eight in number. The evidence of the State shows that those who dealt with the defendants were buying a percentage interest in an apartment building with the right to occupy a particular suite therein as a home and if stock of a corporation was in fact to be involved in the transaction, it was for the sole purpose of working out the cooperative features of the joint ownership of the real estate. It must be observed, as above noted, that the evidence about any existing or proposed corporation whose stock was disposed of or to be disposed of to the purchasers of percentage interests of the apartment building was of such an indefinite nature as to be unenforceable either at law or in equity and if some form of corporate organization was necessary to make the cooperative features of joint ownership of the property more workable, it could only come about by a new agreement between the several owners.

The defendant has presented thirty-seven assignments of error, many of them covering the same or closely related questions. The defendant has grouped these claims of error under twelve headings in his brief and confined his consideration of them under such groupings. He also states that all of the claims of error fall into two categories. First, was the defendant, Samuel Hirsch, entitled to be discharged because the State failed to establish him guilty of a violation of the Blue Sky Law, or entitled to be discharged because Bess Hirsch, the principal, having been found not guilty by the jury, the defendant, Samuel Hirsch, tried as an aider and abettor before the same jury, should have likewise been discharged? Second, defendant, Samuel Hirsch, if not legally entitled to be discharged, is at least entitled to a new trial free of the "errors, passion and prejudice, abounding in the proceedings."

These categories are concerned first with the sufficiency of the indictments, and error in overruling defendant's motion for discharge at the end of the plaintiff's case and also at the conclusion of the taking of evidence, and in the second category the errors may be grouped under the following heads:

First: Error in the admitting of evidence offered by the State, including so-called similar offense (act) evidence, and rejecting competent evidence offered by the defendant and limiting the scope of cross-examination.

Second: Errors in the charge of the Court and related subjects.

Third: Misconduct of the court and prosecutor in the trial of the case to the prejudice of the defendant.

Fourth: Overruling motion for new trial.

The first two claims of error must be overruled. They charge that the allegations of the indictment are not sufficient to charge a violation of the provisions of the Security Act. The allegations of the first and third counts, charging the sale of an unlicensed security, is clearly suf-

ficient under the statute as is equally true as to counts two and four charging the defendants with selling securities, not being licensed so to do as required by law. If greater clarity in the allegations of the indictment was needed, the defendant should have requested a bill of particulars.

Under the evidence, the defendant, Bess Hirsch, was the owner of the property who executed the land contracts claimed by the State to be securities and the defendant, Samuel Hirsch, conducted all the negotiations, acting as the selling agent in such transactions. There is no claim in this case that Mrs. Hirsch acted under the domination of her husband, at least so far as the State's case is concerned. Such claim must of necessity be presented as a defense which was not done in this case, nor is there a claim by the State that she held title to the apartment in trust for her husband. Therefore, the defendant, Samuel Hirsch, had nothing to sell, the property being his wife's and his wife (defendant Bess Hirsch) according to the evidence, put all negotiations for the sale of the property in the hands of her husband. There is absolutely no evidence to support the assertion in the State's brief that the property was that of Samuel Hirsch. The jury verdict found the defendant, Bess Hirsch not guilty and the defendant, Samuel Hirsch, guilty under all four counts of the indictment. If the defendant who was charged with aiding and abetting the sale of the claimed unregistered or unlicensed security was found guilty and the seller (the admitted owner of the property sold) was found not guilty in the same trial by the same jury, such a verdict must be inconsistent. It is difficult to see how an aider and abettor could be guilty if the principal was not where there is but one issue of fact to be determined, that is that the act of selling was unlawful. This must be equally true where the agent is charged as aider and abettor of a co-defendant as principal for the alleged unlawful acts of selling securities without a license. Under such circumstances, where ownership of the property is admitted by the seller and the terms of the sale and the sale is also admitted so that the only issue is as to whether the property sold comes within and is prohibited by the provision of the Securities Act (now known as §§1707.01 to 1707.99 R. C., inclusive), a verdict of not guilty as to the owner and seller could be only on the ground that the sale of the property was not in violation of the Securities Act. We must conclude, therefore, that in any event when the jury found defendant, Bess Hirsch, not guilty in the same trial and on the same evidence upon which they found the defendant, Samuel Hirsch, guilty on all four counts, such a verdict was inconsistent and the defendant, Samuel Hirsch, should have been granted a new trial.

We are quite aware that in separate trials of co-defendants charged with participation in the same crime, verdicts need not be consistent. It is likewise true that where issues of identity or participation in a criminal act are presented in the same trial of two or more defendants, a verdict of guilty of one defendant and not guilty as to a co-defendant will not support a claim of inconsistent verdicts. But where there is but one issue to be decided by the jury, that is whether the security sold

(the sale of which is admitted by the defendant) was one coming within the provisions of the Blue Sky Law, the finding of one defendant not guilty and the other defendant guilty on the same evidence where the defendant found not guilty was the owner of the property and the one held guilty, charged as an aider and abettor, such a verdict is inconsistent and must be set aside.

This identical question was presented in the case of State v. Nowak, 16 C. C. N. S. 596, where the defendant was convicted as an aider and abettor of a special constable on a charge of extortion, and the special constable found not guilty in the same trial. The court held that an aider and abettor cannot be convicted in the same proceeding and by the same jury which acquits his principal.

The other claims of error are numerous covering almost every aspect of the trial. Those dealing with the similar acts section of the Code of Criminal Procedure (§2945.59 R. C.) must for the most part be sustained. The provisions of this section are as follows:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

The court and the prosecutor referred to this statute as a similar **offense** statute. To do so was prejudicial to the defendant's rights. These statements, in effect, told the jury that such evidence was to demonstrate that the defendant was guilty of similar offenses. The only purpose of this section is to make available to the State evidence of similar acts when issues of the defendant's motive or intent, the absence of mistake or accident on his part or the defendant's scheme, plan or system in doing an act is material. No issue of that character is here presented. The defendant admits negotiating the land contracts. He admits that he dictated the terms of such land contracts. The only issue is whether or not the contracts as drawn and sold constitute a violation of the Blue Sky Law as in force at the time the contracts were made, that is, were they a security required to be registered or licensed under the Blue Sky Law or did such contract constitute a sale of an interest in land. The evidence of claimed similar acts was, therefore, clearly inadmissible and the admission of such evidence constituted prejudicial error.

The errors in the rejection and admission of evidence are numerous but because of the principal question to be decided as to whether or not, taking the record in its entirety, the State made out a case as charged in the four counts of the indictment, we do not find it necessary to say more than that for the most part such claims are well taken. This is likewise true of the errors claimed as to the charge to the jury, excluding however, the claim that the court attempted to explain the provisions of the general charge after it had been reduced to writing under the provisions of §2945.10 R. C.

We come now to the sufficiency of the State's case. In the first place, the overwhelming evidence as to the purpose of the Longs and the Venables in entering into the contracts designated as State's Exhibits 1 and 7 respectively, was to purchase a place to live. They were not seeking investments in the security market nor was it the purpose of the defendants to sell securities for investment purposes. The Longs and Venables bought the right to occupy separate suites in an apartment building, together with the right to have transferred to them by warranty deed an undivided percentage interest in the property. The land contracts here considered constituted the purchase of an interest in land. Such transactions are excluded from the provisions of the Securities Act (§1707.01 to §1707.99 R. C.). The term "security" in that Act is clearly and carefully defined by §1707.01-B R. C., the last sentence of which reads:

"Such sections (§1707.45 R. C.) do not apply to bond investment companies or to the sale of real estate."

The reference to stock in these contracts, if it could be said to have any binding effect at all, which we hold it could not, was for the purpose of managing the cooperative feature of the joint ownership of the property.

There are other provisions of the Act which support the substance of the quoted part of the foregoing section, that the Act was not intended to include real estate transactions within the State of Ohio.

For the foregoing reason, we must conclude that the State failed completely (that is that there is no evidence) to show a violation of the Blue Sky Law as charged in the indictments.

This identical question was presented to this Court in two cases, styled **State v. Silberberg**, Nos. 23445 and 23446, **72 Abs 481, CP 70 Abs 449**, where the facts were far more favorable to the State in that the land contracts spelled out the necessity of forming a corporation at the vendor's expense to take title to the property, the corporate stock of which was to be issued to the purchasers of suites to the extent of the percentage interest purchased. This Court, in that case, held that the land contracts there involved constituted a sale of an interest in real estate and not the sale of a security as defined under the Blue Sky Law. The opinion was written by Middleton, J., of the Third District and the judgment concurred in by Judges Doyle and Hunsicker of the Ninth District.

The judgment of guilty and sentence of this appellant is, therefore, reversed and the defendant discharged. Exceptions noted. Order see journal.

KOVACHY, PJ, HURD, J, concur.