OPINION
{¶ 1} Antwan Reid was found guilty by a jury in the Montgomery County Court of Common Pleas of aggravated murder and aggravated robbery, each with a firearm specification. He received a life sentence for aggravated murder and a ten-year sentence for aggravated robbery, to be served consecutively, and two three-year terms of imprisonment on the firearm specifications. Reid appeals from his conviction.
 {¶ 2} The state's evidence established the following facts.
 {¶ 3} On the afternoon of December 15, 2000, at approximately 4:00 p.m., the victim, Wilton Williams, pulled into an alley near the intersection of East Fifth Street and Henry Street in Dayton in his burgundy Cadillac. Shortly thereafter, a green Dodge Stratus also pulled into the alley, and two men stepped from the Stratus and opened fire on Williams at close range as he sat in his vehicle. Williams managed to drive his car out of the alley onto Keowee, and the two assailants jumped back into the green Stratus and followed him. Williams collided with another vehicle on Keowee, at which point the two assailants again jumped out of their car and reached into Williams' car, grabbing some money. They then fled from the scene. Williams died a short time later from multiple gunshot wounds. Witnesses from the scenes of the shooting and the accident identified Reid as one of the shooters and provided the license plate number for the green Stratus.
 {¶ 4} Police determined that the green Stratus was a rental car that had been leased by Latosha Gladden. The police found the car in an alley near her home. As officers were observing the car and waiting for a tow truck to arrive, they saw a yellow Oldsmobile drive by with its lights off but then quickly turn its lights on and drive away when the police cruiser became visible. From the Oldsmobile's license plate number, the police tracked that car to Latosha Gladden as well. Reid's fingerprints were found on the Stratus, the Oldsmobile, and the Cadillac. He was arrested two months later in Tennessee.
 {¶ 5} On June 25, 2001, Reid and his co-defendant, Gregory McCullar, were indicted for aggravated murder and aggravated robbery, each with a three-year firearm specification and a five-year specification for discharging a firearm from a motor vehicle. Reid asked to be tried separately from McCullar, who was charged with the same offenses, but his motion was denied. Reid was found guilty of aggravated murder and aggravated robbery, along with the three-year firearm specifications, but he was found not guilty of having discharged a firearm from a motor vehicle. McCullar was found guilty of aggravated robbery with a firearm specification, but he was found not guilty of aggravated murder or the other specifications. Reid was sentenced accordingly, as discussed supra.
 {¶ 6} Reid raises seven assignments of error on appeal.
 {¶ 7} "1. The Trial Court Erred In Overruling Appellant's Motion For A Separate Trial."
 {¶ 8} Reid claims that his motion for a separate trial from co-defendant Gregory McCullar should have been granted because the admission at trial of an out-of-court statement made by McCullar was prejudicial to him. Reid relies on Bruton v. United States (1968),391 U.S. 123, 88 S.Ct. 1620, in support of his argument.
 {¶ 9} Bruton involved a charge of armed postal robbery, and the co-defendant admitted to the postal inspector that he had committed the crime with Bruton. Evidence of this statement was admitted at trial through the postal inspector's testimony. The supreme court held that the admission at trial of a co-defendant's statement implicating the defendant is prejudicial error where the co-defendant does not take the stand because the defendant is thereby denied his constitutional right of confrontation. The court further held that, in such a situation, prejudice is presumed even where the jury is instructed to limit its consideration of the statement to the co-defendant only. Id. at 125,88 S.Ct. at 1622. Following Bruton, the Supreme Court of Ohio has likewise held that "[a]n accused's right of cross-examination secured by the confrontation clause of the Sixth Amendment is violated in a joint trial with a non-testifying codefendant by the admission of extrajudicial statements made by the codefendant inculpating the accused." State v.Moritz (1980), 63 Ohio St.2d 150, paragraph one of the syllabus.
 {¶ 10} We have held that, where a co-perpetrator has admitted his own involvement in a crime, which corroborated the testimonies of other witnesses who had identified two men, but the co-perpetrator never named his accomplice or mentioned an accomplice, no Bruton violation occurred.State v. Champion (Mar. 5, 1999), Montgomery App. No 17176. In Reid's case, the alleged Bruton violation occurred when a police officer testified that McCullar had made the following statement: "I didn't mean to kill that man. It was just supposed to be a robbery." Reid claims that the "importance of this statement in this joint trial cannot be overstated" and that the statement leaves "no doubt * * * that it was [Reid] alone who killed the victim." We disagree with Reid's interpretation of this evidence. McCullar's statement implies that a plan for the crime was conceived and that the events, as they unfolded, deviated from that plan. Nothing in the statement indicates that Reid was involved in the plan or that he was an accomplice, much less that he was the lone gunman, as Reid claims. In our view, the admission of McCullar's statement did not implicate Reid and therefore did not violate Bruton.
 {¶ 11} The first assignment of error is overruled.
 {¶ 12} "2. The Trial Court Erred In Dismissing A Juror During The Trial."
 {¶ 13} Reid contends that the trial court erred in excusing a juror who had been contacted by a courtroom spectator during a break in court proceedings. The juror had been upset by the encounter, and the trial court concluded that she would not be able to focus on the case.
 {¶ 14} R.C. 2945.29 states that "[i]f, before the conclusion of the trial, a juror becomes sick, or for other reason is unable to perform his duty, the court may order him to be discharged. In that case, if alternate jurors have been selected, one of them shall be designated to take the place of the juror so discharged." Likewise, Crim.R. 24(F)(1) provides for the use of alternate jurors if regular jurors "become or are found to be unable or disqualified to perform their duties." Whether a juror is unable to perform his duty is a determination that lies within the trial court's discretion. State v. Kish, Lorain App. No. 02CA008146,2003-Ohio-2426, ¶ 6; State v. Tate (Mar. 7, 1989), Clark App. No. 2431. In cases involving outside influences on jurors, the trial court is granted broad discretion in dealing with the contact and determining whether to declare a mistrial or to replace an affected juror. State v.Johnson, 88 Ohio St.3d 95, 2000-Ohio-276.
 {¶ 15} The juror in question, Valerie Ragland, stated that she had been approached by a woman at a hot dog stand outside the courthouse after the trial had adjourned for the day around lunchtime. The woman had been sitting in the courtroom during the trial. Ragland did not know whether she was affiliated with one of the defendants, with the victim, or with the prosecution. The woman said to Ragland, "I know you, you work at Miami Valley Hospital. Aren't you a registered nurse?" Ragland lied in response to this question because it made her uncomfortable, denying that she worked at Miami Valley, and walked away. Ragland contacted the bailiff shortly thereafter.
 {¶ 16} The next day, Ragland represented to the court that she had been very unsettled by the incident in question. Ragland said that, in her work, she did not float throughout the hospital, but worked in only one department, and that the nurses on her floor had been harassed by patients' family members in the past. She stated that someone would have to know exactly where she worked to know that she worked at Miami Valley at all. She was uncomfortable with the fact that the woman from the courtroom possessed this information. She stated that the incident had made her afraid that other people from the courtroom would approach her and that it had also made her reflect for the first time about what the reactions of the parties would be to the verdict. She said that it had made her think "more about her own safety as opposed to the livelihood of the young men in the courtroom [the defendants]." She stated that she would be wondering about which side the woman had been with throughout the remainder of the trial. Ragland was crying and wringing her hands as she spoke about these feeling with the court. Ragland also informed the court that she had had her boyfriend drive her to the courthouse the day after the incident, rather than drive herself as she had done previously, because she was afraid of walking to and from the parking garage. She expressed anxiety over the fact that her boyfriend would be out of town for the upcoming weekend and she would be home alone with her small child. Although Ragland did not ask to be removed from the jury, the trial court acted within its discretion in concluding that her objective participation in the trial had been compromised by her encounter with the woman at the hot dog stand. Thus, the trial court did not err in removing Ragland from the jury.
 {¶ 17} The second assignment of error is overruled.
 {¶ 18} "3. Prosecutorial Misconduct During Closing Argument Deprived Appellant Of A Fair Trial."
 {¶ 19} Reid claims that two comments made by the prosecutor during closing argument amounted to prosecutorial misconduct. Defense counsel did not object to the comments in question, and thus the comments must be viewed for plain error. Accordingly, we must consider whether the outcome of the trial clearly would have been different but for the prosecutor's comments, keeping in mind that a prosecutor is given a great deal of latitude during closing argument. State v. Stroud, Montgomery App. No. 18713, 2002-Ohio-940.
 {¶ 20} The first comment to which Reid objects was the prosecutor's statement that state's witness Brian Burns had told the truth and had been a good witness. Reid claims that the prosecutor improperly vouched for this witness. Reid is correct that expressions of personal opinion about witness credibility are improper because they invade the province of the jury, State v. Carpenter (1996), 116 Ohio App.3d 615,622. However, viewed in context, we believe that the prosecutor's statement about Burns was within the latitude afforded to him. He stated:
 {¶ 21} "Remember, witnesses observe and recall significant and startling events that happen in their life, and this man [Burns] has got the best vantage point of most of the witnesses that you've heard. He's out there in the lot and he sees him, Reid, he sees him, McCullar, doing what they did that day, and he came in here to court, told you the truth. He was a very good witness. I mean, you listened to him.
 {¶ 22} "And, you know, you're supposed to ultimately judge witnesses, and the judge will tell you who have had the opportunity to hear or see or know the things that they testify to. And he [Burns] was in a very good position to tell you what he saw that day. * * *"
 {¶ 23} The prosecutor should not have told the jury that Burns "told you the truth." However, viewed as a whole, the prosecutor's comments were aimed toward pointing out the strength of Burns' testimony based on evidence in the record — his close vantage point to the crime — and not on the prosecutor's own sense of whether Burns was being truthful. Taken in context, this comment was not a basis for reversal.
 {¶ 24} The second portion of closing argument to which Reid objects is the prosecutor's attempt to link Reid to the owner of the Stratus and the Oldsmobile, Latosha Gladden. The prosecutor referred to Gladden as Reid's girlfriend, even though no evidence was presented to this effect. Gladden had refused to testify at trial. The prosecutor's suggestion that there had been some connection between Gladden and Reid was supported by witness testimony that two of Gladden's cars had been implicated in the crime and that Reid's fingerprints had been found on both cars. Although the prosecutor misspoke when he suggested that Gladden was Reid's girlfriend, we fail to see how Reid was prejudiced by this comment. If anything, such a relationship would have provided a benign explanation for the presence of Reid's fingerprints and thus might have worked to his advantage. In any event, we are quite sure that the comment did not effect the outcome of the trial.
 {¶ 25} The third assignment of error is overruled.
 {¶ 26} We will consider the fourth and fifth assignments of error together.
 {¶ 27} "4. Appellant's Conviction For Aggravated Murder With A Gun Specification Is Based Upon Insufficient Evidence.
 {¶ 28} "5. Appellant's Conviction For Aggravated Robbery With A Gun Specification Is Based Upon Insufficient Evidence."
 {¶ 29} Reid contends that there was insufficient evidence that he committed aggravated murder because the identification testimony was weak and there was no evidence that he had killed Williams purposely. Reid claims that his aggravated robbery conviction suffered from the same infirmities as to the identity of the perpetrator and whether he had acted knowingly. With respect to the gun specifications attached to both the aggravated murder and aggravated robbery convictions, Reid contends that there was insufficient evidence to establish his guilt because no gun was ever recovered by the police.
 {¶ 30} The sufficiency of the evidence is a term of art meaning that legal standard which is applied to determine whether the evidence is legally sufficient to support the verdict as a matter of law. State v.Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, citing Black's Law Dictionary (6 Ed. 1990) 1433. In considering the sufficiency of the evidence, the pivotal question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus.
 {¶ 31} In this case, the state presented the testimony of one eyewitness, Brian Burns, who positively identified Reid as one of the shooters and another who positively identified Reid as a front seat passenger in the green Stratus as it fled from the shooting. Several other witnesses also connected the green Stratus to the shooting and to the accident scene at which two black men got out of the Stratus and grabbed money from the victim's car before fleeing. Moreover, Reid's fingerprints were found in the Stratus and on the bumper of the victim's Cadillac. This evidence, when viewed most favorably to the prosecution, was sufficient to establish Reid's involvement in the robbery and murder.
 {¶ 32} As for the requisite intent, the supreme court has repeatedly held that the infliction of multiple close-range gunshots to a vital area of the body tends to demonstrate a purpose to kill. See Statev. Treesh, 90 Ohio St.3d 460, 485, 2001-Ohio-4; State v. Palmer,80 Ohio St.3d 543, 562, 1997-Ohio-312; State v. Otte, 74 Ohio St.3d 555,564, 1996-Ohio-108. Likewise, the court has held that the use of an inherently dangerous instrumentality in a robbery evinces an intent to kill because homicide is a natural and probable consequence. See Statev. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 151; State v. Clark
(1988), 38 Ohio St.3d 252, 256. Under the circumstances of this case, there can be no question that the evidence established that Reid had the requisite intent to kill Williams and to commit a theft offense.
 {¶ 33} Finally, Reid argues that the firearm specifications were supported by insufficient evidence because the gun was never recovered and presented as evidence against him. The supreme court has held, however, that the state is not required to produce the actual firearm or to prove its operability in order to support a firearm specification. SeeState v. Murphy (1990), 49 Ohio St.3d 206, 209. Rather, the jury is permitted to draw reasonable inferences from the evidence. Based on the coroner's testimony about Williams' wounds, eyewitness testimony, and physical evidence recovered from the scene, there can be no question that a firearm was used in these offenses.
 {¶ 34} The fourth and fifth assignments of error are overruled.
 {¶ 35} "6. Appellant's Conviction For Aggravated Murder Should Not Stand Due To An Inconsistent Jury Verdict."
 {¶ 36} Reid observes that, although he and McCullar were charged with the same offenses, the jury's verdicts differed on some of the counts. He claims that these inconsistencies should not be allowed to stand.
 {¶ 37} McCullar was found guilty of aggravated robbery but not of aggravated murder, whereas Reid was found guilty of both offenses. Reid claims that some courts have carved out an exception to their usual reluctance to disturb different jury verdicts among codefendants where the evidence was "precisely the same and identical in all respects as to both defendants." He contends that this case falls within that category. He relies on State v. Hirsch (1956), 101 Ohio App. 425, and State v.Morris (1975), 42 Ohio St.2d 307. Neither Hirsch nor Morris requires the result that Reid suggests. Indeed, Hirsch states that "where issues of identity or participation in a criminal act are presented in the same trial of two or more defendants, a verdict of guilty of one defendant and of not guilty as to a co-defendant will not support a claim of inconsistent verdicts." Hirsch, 101 Ohio App. at 431. This is precisely the situation presented here. The identification testimony was stronger as to Reid than as to McCullar. Therefore, we find no inconsistency as to the verdicts.
 {¶ 38} The sixth assignment of error is overruled.
 {¶ 39} "7. The Trial Court Erred In Imposing Consecutive Three-year Sentences On The Firearm Specifications."
 {¶ 40} At the sentencing hearing, the trial court imposed a three-year term of imprisonment for a firearm specification, to be served prior to the life sentence for aggravated murder and the ten-year sentence for aggravated robbery. In its termination entry, however, the trial court imposed three-year terms on each of two firearm specifications, to be served consecutive to the other sentences. Reid contends that the sentence announced in court was the correct sentence because the two firearm convictions arose from the same act and were required to be merged at sentencing. We agree that the trial court was required to merge the sentences in question, and the state concedes that one three-year sentence was proper as well. Accordingly, we order the trial court to modify the termination entry to reflect one three-year sentence on the firearm specifications, to be served consecutively with the sentences for aggravated murder and aggravated robbery.
 {¶ 41} The seventh assignment of error is sustained.
 {¶ 42} The judgment of the trial court will be affirmed in part and reversed in part, and the matter will be remanded to the trial court for merger of the sentences on the firearm specifications only.
BROGAN, J. and YOUNG, J., concur.