**In re ZILBA.**

[Cite as *In re Zilba* (1996), 110 Ohio App.3d 258.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–96–100.

Decided April 3, 1996.

*Larry DiLabbio,* for petitioner.

*Anthony G. Pizza,* Lucas County Prosecuting Attorney, and *John Weglian,* Assistant Prosecuting Attorney, for respondent.

———————

ABOOD, Judge.

This case is before this court for consideration of the substantive issues raised in the petition for a writ of habeas corpus filed by petitioner George C. Zilba on April 1, 1996.

The facts that are relevant to the issues before this court are as follows. On February 8, 1996, petitioner appeared before the Lucas County Court of Common Pleas and entered a plea of no contest to charges of felonious assault and failure to comply with the order or signal of a police officer with a physical harm specification. Petitioner's plea was accepted by the court and petitioner was found guilty. On March 19, 1996, petitioner appeared before the trial court for sentencing. The trial court sentenced petitioner to periods of incarceration with the Ohio Department of Rehabilitation and Corrections of five to twenty-five years on the first offense and two to five years on the second offense, and ordered the sentences to be served consecutively. The trial court then suspended the incarceration portion of the sentence and placed petitioner on probation with the following conditions: (1) that he pay a fine of $1,000; (2) that he make restitution to the victim; (3) that he seek and maintain employment; (4) that he use no drugs or alcohol; (5) that he submit to urinalysis; (6) that he participate in the inpatient program at the Salvation Army Adult Rehabilitation Center for the first six months; and (7) that he obtain a sponsor and attend weekly substance abuse programs. Petitioner was delivered to the custody of the Salvation Army on that date.

Thereafter, petitioner was notified by the court to appear before it on March 28, 1996, with counsel, for a hearing. Petitioner did so appear, at which time the trial judge stated that certain matters had been brought to his attention since the date of sentencing. The court then called Toledo Police Detective Jim Porter as a witness. The relevant portions of Detective Porter's testimony include his statements that (a) Zilba had told him on the night of his arrest that the day before his arrest he had made six crack cocaine purchases, and (b) Officer Harris had told him that he had had surgery on both knees as a result of his injuries. Following Porter's testimony, the court read into the record a letter which he had written to the Salvation Army on March 21, 1996 that stated that if "the defendant is released from your facility prior to September 19, 1996, notify this Court immediately. * * * This early release results in a violation of the terms

and conditions of the probation." The trial court then stated, "It's been brought to my attention through phone calls to the Salvation Army that he is released on different occasions. * * * I was, I think, misled as far as what that facility encompassed. And the Court is going to vacate its sentence of March 19th, 1996, and we are before the Court for sentencing."

At the close of the hearing, the trial court vacated its entry of March 19, 1996 and ordered petitioner committed to the Ohio Department of Rehabilitation and Correction for five to twenty-five years on the felonious assault conviction and two to five years on the charge of failure to comply with the order or signal of a police officer. The sentences were ordered served consecutively for a total period of incarceration of seven to thirty years.

On April 1, 1996, petitioner filed his petition for a writ of habeas corpus in this court. In his "Verified Petition For Writ of Habeus [sic] Corpus," petitioner asserted that his confinement "is illegal and unconstitutional and the Judge was without jurisdiction to impose said sentence * * *."

Upon review thereof on April 1, 1996, this court filed a decision and judgment entry in which it granted petitioner's request for a writ of habeas corpus and ordered Lucas County Sheriff James Telb to bring petitioner before this court on April 3, 1996, at 8:30 a.m. for hearing on the issues raised in the petition.

On April 2, 1996, the trial court filed an opinion, to which were attached transcripts of the hearings held on March 19 and March 28, in which it stated that "through no fault of its own," certain information had not been available at the March 19 hearing, and gave the following reasons for its decision of March 28 to vacate appellant's sentence: (1) "at the court's March 28, 1996, hearing, Detective Jim Porter testified that defendant did not merely possess $300 worth of crack cocaine; rather, upon being apprehended, defendant confessed to having made six (6) crack cocaine purchases during that day"; (2) "the court was informed that both of Officer Harris's knees suffered contusions and required arthroscopic surgery"; and (3) "the rehabilitation program does not totally confine defendant; he apparently is free to leave the facility for hours at a time."

Also on April 2, 1996, attorney John Weglian, acting on behalf of Sheriff James Telb, filed a "memorandum in opposition to petition for writ of habeas corpus" in this court, in which he asserted that "a habeas corpus action is an inappropriate method of challenging the sentence in the instant case." In support thereof, attorney Weglian argued that petitioner failed to "allege or establish" that the trial court did not have jurisdiction to "resentence" him and that petitioner had an adequate remedy at law through which to challenge the trial court's actions by way of direct appeal.

On April 3, 1996, the case was called for hearing on the substantive issues raised in the petition for writ of habeas corpus. Petitioner appeared with counsel, Larry DiLabbio; Assistant Lucas County Prosecutor John Weglian appeared on behalf of Sheriff James Telb. Counsel for the parties initially agreed that the sole issue before the court was whether on March 28, 1996 the trial court had jurisdiction to proceed with the sentencing "reconsideration" hearing. In his oral argument to the court, attorney Weglian asserted, alternatively, that the March 28 hearing constituted probation violation proceedings. At the conclusion of the arguments of counsel, the court took the matter under consideration.

This court has before it, and has reviewed, the entire record of proceedings before the trial court. Upon consideration thereof, this court finds preliminarily that while the court's statement at the second sentencing hearing that the condition of probation involving the Salvation Army program was not meeting his expectations, neither that reference nor any other aspect of the court proceeding, nor the court's docket entry nor the court's opinion even remotely suggests that the hearing on March 28, 1996 was intended to be or was in fact a probation violation proceeding.

We, therefore, find further that the only determination to be made by this court is whether the trial court had jurisdiction to vacate the March 19 sentence and impose a new sentence on March 28 after petitioner had already begun serving his period of probation under the original sentence.

It has been clearly stated that once execution of sentence has begun, the trial court may not amend the sentence to increase the punishment. *State v. Greulich* (1988), 61 Ohio App.3d 22, 572 N.E.2d 132. See *Columbus v. Messer* (1982), 7 Ohio App.3d 266, 7 OBR 347, 455 N.E.2d 519; *United States v. Benz* (1931), 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354. In *Messer, supra,* at 268, 7 OBR at 347–348, 455 N.E.2d at 521, the Court of Appeals for Franklin County addressed the question of exactly when execution of sentence has begun: "Where the full sentence involves imprisonment, the execution of sentence is commenced when the defendant is delivered from the temporary detention facility of the judicial branch to the penal institution of the executive branch. *United States v. Benz, supra* * * *."

In *Brook Park v. Necak* (1986), 30 Ohio App.3d 118, 30 OBR 218, 506 N.E.2d 936, a case factually very similar to this case, the Cuyahoga County Court of Appeals expanded on the issue of when execution of a sentence begins as it relates to periods of probation and days of incarceration in local jails. In that case, the defendant had pled guilty to an offense of operating a motor vehicle while under the influence of alcohol and was sentenced to serve thirty days in jail and pay a fine. The court suspended twenty-seven of the days and placed the

defendant on probation for one year. Six weeks later, the court recalled the defendant for reconsideration of the previous sentence. Apparently, the presentence report that the court had before it at the time of the original sentencing hearing had indicated a prior conviction in a neighboring community, but defendant's counsel had denied that it involved an alcohol-related moving violation. It was when the court later obtained records from the other municipality which provided contrary information that it summoned the defendant and ultimately resentenced him to sixty days in jail with fifty days suspended on the same conditions of probation as the original sentence. Upon review of the trial court's authority to so resentence, the Court of Appeals for Cuyahoga County stated that the defendant's right to expect finality precluded the trial court from modifying "a legally proper sentence without statutory authority after defendant paid the fine and apparently served part of the jail term" and that "[m]isinformation from defendant's counsel did not make the original sentence unlawful." *Id.*, 30 Ohio App.3d at 120, 30 OBR at 220, 506 N.E.2d at 938. The court recognized that "[i]f the court could reconsider its sentence whenever it acquired new derogatory information, the defendant would have no assurance about the punishment's finality." *Id.* The *Brook Park* court ultimately found that "Ohio courts have no authority, *sua sponte* or otherwise, to reconsider their own valid final judgments in criminal cases." *Id.*, paragraph three of the syllabus.

This court notes that the state relies heavily on *State v. Passinicci* (Nov. 4, 1977), Hancock App. No. 5–77–12, unreported, to support its argument that the trial court had continuing jurisdiction pursuant to R.C. 2929.51 to modify its original order since, by submitting himself to the inpatient treatment program at the Salvation Army as a condition of his probation, petitioner had not yet begun to serve his sentence.

In *Passinicci, supra,* the defendant entered a plea of guilty to two charges of passing bad checks and, on May 9, 1977, was sentenced to pay a fine and serve concurrent terms of imprisonment of six months to five years. The incarceration portion of the sentence was suspended and the defendant was placed on probation for two years on several conditions, one of which was that he serve thirty days in the Hancock County Jail.

On May 11, 1977, the county prosecutor filed a motion to modify the sentence, based on newly acquired information that the defendant had an alias under which he had been previously convicted of criminal charges. On May 25, 1977, the trial court vacated its former judgment and resentenced Passinicci to "not less than 2 nor more than 5 years * * *, to be served consecutively." *Id.*

In considering the issue of whether the trial court erred in resentencing the defendant after he had been imprisoned in the county jail pursuant to the terms of his probation, the Hancock County Court of Appeals recognized that, pursuant

to R.C. 2951.02, the trial court had the authority to require Passinicci to serve up to six months in the county jail or workhouse as a term of his probation. The appellate court went on to state that "the issue becomes whether or not this constitutes a part of the sentence. If it does, then the sentence cannot be modified if the defendant had begun to serve it. * * * However, it is clear from both the statutory authority and from the very nature of the jail term that it in no way constitutes service of the sentence imposed by the court. Under the statute the authority of the court to impose such a condition to probation or to grant probation at all is dependent on its exercise 'before an offender is delivered into the custody of the institution in which he is to serve his sentence.' "

Accordingly, the *Passinicci* court concluded that since the defendant in that case was ordered sentenced to prison and was given the option to avoid such incarceration by voluntarily committing himself to the county jail for thirty days before being placed on probation, "the time served [therein] is part of his voluntary compliance with the terms of probation and is in no way a service of the actual sentence, which has been suspended and never gone into effect"; therefore, the trial court had jurisdiction to modify his sentence. *Id.*

While this court acknowledges that the holding of *Passinicci, supra,* would be in conflict with a decision in this case that finds that petitioner had begun to serve his sentence when he began his term of probation as set forth above, we disagree with its reasoning and find it to be in direct conflict with *Brook Park, supra,* and we therefore decline to follow it.

Upon consideration of the foregoing, this court finds that (1) execution of the March 19, 1996 sentence of the court commenced when petitioner began serving the period of probation set forth therein, and (2) once the execution of that sentence began the trial court was without jurisdiction to reconsider and impose a higher sentence upon petitioner.

Accordingly, this court finds further that the trial court's March 28, 1996 sentencing judgment is a nullity and wholly unenforceable.

It is therefore ordered that petitioner be released from all further confinement under the March 28, 1996 judgment entry and that he remain subject to the terms and conditions of the March 19, 1996 sentencing order. Court costs assessed to respondent.

*Writ granted.*

HANDWORK and SHERCK, JJ., concur.