Christopher Jordan, defendant-appellant, appeals from the judgment of the Cuyahoga County Court of Common Pleas, Criminal Division, Case No. CR-346391, in which the jury convicted defendant-appellant of aggravated murder, aggravated robbery and having a weapon while under disability. Defendant-appellant was also convicted of separate firearm specifications on each count. Defendant-appellant assigns nineteen errors for this courts review.
Defendant-appellant's appeal is affirmed in part, reversed in part and remanded for re-sentencing.
On January 13, 1997, Christopher Jordan, defendant-appellant, and co-defendant Ronald Gunter were indicted by the Cuyahoga County Grand Jury in a three-count indictment arising out of the murder/robbery of Raymond Harris. The first count of the indictment charged both men with aggravated murder in violation of R.C. 2903.01. The second count of the indictment charged both men with aggravated robbery in violation of R.C. 2911.01. The third and final count of the indictment charged both men with having a weapon while under disability. Each count contained an attendant firearm specification.
On January 21, 1997, defendant-appellant was arraigned, whereupon he entered a plea of not guilty to all three counts contained in the indictment. The matter proceeded through pretrial discovery during which a number of pre-trial motions were filed by defendant-appellant including a motion for a separate hearing on a prior conviction, a motion for separate trials and a motion to suppress evidence.
In his motion for a separate hearing on a prior conviction, defendant-appellant sought to withhold information regarding a prior conviction from the jury due to the alleged danger of unfair prejudice. The motion for separate trials was based upon defendant-appellant's contention that he and Ronald Gunter were going to present antagonistic defenses which, if presented together, would prevent defendant-appellant from receiving a fair trial. The suppression motion was based upon defendant-appellant's contentions that he was arrested illegally and that the resulting search warrant for defendant-appellant's home was invalid. Defendant-appellant also sought to exclude an oral statement made to the police after his arrest. The trial court denied all three of defendant-appellant's pre-trial motions prior to trial.
Trial commenced on March 10, 1997. The first witness for the state was Celia Merryweather, the girlfriend of the victim, Raymond Harris. Ms. Merryweather testified that the victim worked at Progressive Insurance and had a habit of cashing his paycheck and carrying large sums of money on his person. On the day of the murder, Ms. Merryweather stated that the victim cashed his paycheck in the amount of $601.85 and went to a bar known as the Sir-Rah House to shoot pool.
The second witness for the state was Damien Pearson, a patron of the Sir-Rah House who was acquainted with the victim from shooting pool. On the night of the murder, Pearson was shooting pool with the victim when he observed the victim go to the bar and produce a large wad of cash when buying a drink. Pearson noticed two other male patrons of the bar eyeing the victims cash at the same time. One of the males was wearing a blue and green triple fat goose down coat while the other wore a long black leather coat. Later in the evening, Mr. Pearson observed the two males follow the victim outside the bar. Approximately two minutes later, Pearson stated that he heard one gun shot. As he emerged from the bar, Mr. Pearson observed the male in the blue and green down jacket fleeing from the scene.
Detective William Wagner of the Cleveland Police Departments Scientific Investigation Unit was the third witness for the prosecution. Detective Wagner testified that he responded to the crime scene where, during his investigation, he discovered three 9 millimeter shell casings at the scene of the shooting.
The states fourth witness was Jerry Wilder. Mr. Wilder testified that at approximately 12:30 a.m. on December 5, 1996, he and a friend named Rayshawn Lindsey drove up to the Sir-Rah House in his girlfriend's vehicle. Wilder maintained that he saw both defendant-appellant and Ronald Gunter at the bar on the night of the murder. Wilder testified further that he observed the victim leave the bar followed closely by defendant-appellant and Gunter. Wilder stated that he heard Gunter tell defendant-appellant that he was going to rob the victim and asked defendant-appellant to "give him the pipe," referring to a gun which defendant-appellant apparently had in his possession.
Wilder then testified that he saw Gunter approach the victim and demand money. When the victim did not comply, Gunter allegedly fired a shot toward the victims leg. Wilder maintained that Gunter then fired a shot into the victims head. The victim fell back and Gunter allegedly began going through the victims pockets. Wilder then observed Gunter flee the scene. Wilder himself then fled the scene before the police arrived. Wilder denied having any connection to Gunter or the murder.
The day after the murder, Wilder maintained that he spoke with defendant-appellant at a gas station at the corner of East 131st
Street and Miles. Defendant-appellant allegedly maintained that Gunter was upset with the amount of money taken during the robbery and that he did not intend to give himself up to the police. Wilder testified that defendant-appellant stated that he and Gunter took between $500 and $1,000 from the victim.
Approximately two days after the murder, Wilder spoke with the police and gave a written statement regarding the events in question. Wilder also told the police that defendant-appellant usually carried a 9 millimeter weapon and, he believed, defendant-appellant kept the gun somewhere in the backyard of his mother's home.
Officer Michael Duller of the Cleveland Police Department was the fifth witness for the state. Officer Duller and his partner, Officer Messer, were the first police officers to arrive at the Sir-Rah House on the night in question. Officer Duller testified that he observed the victim with a gunshot wound to the head and immediately called for an ambulance. Officer Duller also obtained a description of the shooter and the route the shooter took when fleeing from the scene.
The sixth witness for the state was Kenneth Bailey, an acquaintance of defendant-appellant. Mr. Bailey testified that approximately two weeks after the Sir-Rah House murder, defendant-appellant told him that some homicide detectives were looking for him regarding the incident. Bailey maintained that he told defendant-appellant to talk to the detectives. Defendant-appellant went on to inform Bailey that, on the night of the murder, he gave his gun to his "dude" for the purpose of robbing the victim at the Sir-Rah House as they had seen the victim with what appeared to be a large amount of cash. Defendant-appellant stated further that his dude shot the victim, took his money and fled with defendant appellant in a Jeep with Jerry Wilder. Upon cross-examination, Bailey stated further that Jerry Wilder told him that Wilder picked up both defendant-appellant and the shooter after the murder in Wilder's girlfriend's Jeep. Defendant-appellant and the shooter then split up the stolen money.
Kenneth Bailey also testified regarding his arrest along with defendant-appellant on January 3, 1997. Bailey was driving his 1985 Fleetwood Cadillac, defendant-appellant was sitting in the backseat and a male known only as Greg was in the front passenger seat. Bailey maintained that defendant-appellant had given Greg his 9 millimeter handgun because he knew Greg would flee if the police stopped the car since Greg allegedly had an outstanding arrest warrant. The police executed a traffic stop of Bailey's vehicle after they witnessed the car go through a stop sign. Bailey pulled the car into his cousins driveway and Greg fled the scene leaving behind the weapon given to him earlier by defendant-appellant, who had remained in the car. The police found the weapon during a search of the vehicle. The 9 millimeter weapon discovered in Bailey's automobile was not the murder weapon from the Sir-Rah House murder. Bailey testified, however, that earlier, defendant-appellant had offered him the actual murder weapon. Bailey did not accept the weapon.
The seventh witness for the state was the bar manager for the Sir-Rah House, Thomas Marshall. Mr. Marshall testified that he was working on the night of the killing. He knew the victim as a pool player who drank beer and did not cause trouble. Marshall did not see defendant-appellant the night of the shooting. Marshall testified further that defendant-appellant had told him later that defendant-appellant had been at the bar on the night in question even after the police had arrived on the scene.
Marshall did identify Ronald Gunter as the shooter and stated that he observed the shooter flee the scene. Marshall admitted that defendant-appellant's brother, Burke Jordan, had paid him a visit after the killing to discuss defendant-appellant's problem.
The states eighth witness was Dr. Atela Miron, Deputy Coroner with the Cuyahoga County Coroner's office. Dr. Miron performed the autopsy on the victim and testified as to the path of the bullet and the injuries it caused. Dr. Miron stated that, with the type of injury sustained by the victim, death was practically instantaneous. As a result of the autopsy, Dr. Miron ruled the death a homicide.
Detective Tom Lucey of the Cleveland Police Departments Scientific Identification Unit, Forensic Firearms, was the states ninth witness, Detective Lucey, a firearms identification expert, testified that the three slugs discovered at the murder scene had been discharged from the same 9 millimeter weapon. The weapon recovered as a result of the Bailey arrest was not a match to the three shell casings recovered from the scene.
The tenth witness for the state, Robert Kelly, a security guard at the Sir-Rah House at the time of the murder, testified that the victim was a regular at the bar who played pool. On the night of the murder, Mr. Kelly heard the shots fired and went outside. Kelly did not get a good look at the shooters face, although he did see the shooter leave the scene.
The states eleventh witness was Ralph Robinson, a patron at the Sir-Rah House on the night of the murder. Robinson testified that he saw the victim playing pool on the night in question. Robinson also observed the victim approach the bar and purchase a drink. As the victim paid for the drink, Robinson noticed a large wad of bills in the victims possession. Robinson noticed defendant-appellant eyeing the victims money at the same time. After the victim returned to the pool table, Robinson observed defendant-appellant and his group leave the bar. Robinson stated further that he was near the front door at the time of the shooting and witnessed the murder. Robinson identified defendant-appellant and the co-defendant as being involved in the shooting.
The final witness for the state was Detective Robert Matuszny of the Cleveland Police Departments Homicide Unit. Detective Matuszny responded to the scene of the murder at approximately 1:50 a.m. and obtained a general description of the events leading to the murder. The next day Detective Matuszny received an anonymous tip that defendant-appellant had been involved in the murder. Soon after, Detective Matuszny interviewed Jerry Wilder, photographed the Jeep Wilder had been driving and took a written statement from Wilder regarding the night in question. Detective Matuszny then interviewed Pearson and Bailey and had the 9 millimeter handgun recovered from Bailey's car test fired.
As a result of his investigation, Detective Matuszny interviewed defendant-appellant. During the interview, defendant-appellant admitted that he was at the Sir-Rah House on the night of the murder with an acquaintance Carlton Gilmore. While defendant-appellant stated that he saw the murder, he denied any involvement whatsoever in the killing and denied providing a gun to his co-defendant. Detective Matuszny subsequently executed a search warrant on defendant-appellant's house where several live 9 millimeter rounds of ammunition were discovered in a grill in the backyard.
The state then rested its case. Defendant-appellant moved for judgment of acquittal pursuant to Crim.R. 29. The trial court denied defendant-appellant's motion.
Defendant-appellant's first witness was Carlton Gilmore, a friend of defendant-appellants for approximately ten years. Gilmore, a convicted drug trafficker, corroborated defendant-appellant's version of events on the night of the shooting. Gilmore maintained that defendant-appellant did not have any connection with the shooting or the murder weapon itself.
Co-defendant, Ronald Gunter, testified in his own behalf. Gunter maintained that he was not present at the Sir-Rah House on the night of the shooting. Gunter maintained that he was at his home in Parma, Ohio moving a toy box from his mother-in-law's apartment to his apartment along with his friend Canton Jones.
Gunter testified further that, after the murder, defendant-appellant came over to his house and told him what had happened at the Sir-Rah House the night Raymond Harris was killed. Defendant-appellant admitted that he and James Wilder had been at the Sir-Rah House on the night of the murder. During the course of the evening, defendant-appellant noticed the victim playing pool and saw that he had a large sum of money in his possession. Defendant-appellant then called his brother, Burk Jordan, on a cell phone. Burk Jordan arrived at the Sir-Rah House soon after. Gunter testified further that defendant-appellant obtained a gun from James Wilder and gave it to his brother, Burk. Burk Jordan then allegedly shot Raymond Harris, took the victims money and fled from the scene along with Wilder. Defendant-appellant's cross-examination of his co-defendant centered upon Gunter's alleged version of the murder.
Defendant-appellant renewed his motion for judgment of acquittal at the close of all the evidence. The trial court once again denied defendant-appellant's Crim.R. 29 motion. At the conclusion of the case, defendant-appellant maintained that he did not stipulate to the prior offense set forth in the indictment and, since the case had concluded, it was too late for the state to bring in evidence of the prior conviction. The state maintained that defendant-appellant had stipulated to the prior conviction. Consequently, the trial court reopened the case for the limited purpose of allowing the state to submit evidence establishing the defendant-appellant's prior conviction. This was done over defendant-appellant's objection since, at that point in the proceedings, defendant-appellant maintains that he was willing to stipulate to the conviction.
On March 24, 1997, the jury found defendant-appellant guilty on all three counts contained in the indictment. Co-defendant Ronald Gunter was found not guilty on all charges. On April 4, 1997, defendant-appellant filed a motion for a new trial. The trial court denied defendant-appellant's motion, after a hearing, on May 15, 1997. On April 30, 1997, defendant-appellant filed a second motion for a new trial based upon alleged newly discovered evidence. The trial court overruled defendant-appellant's second motion for a new trial on October 8, 1997.
On October 8, 1997, the trial court sentenced defendant-appellant to life in prison, plus three years on the gun specification on count one. The trial court merged counts one and two for purposes of sentencing. Defendant-appellant was sentenced to one year on count three, plus three years on the gun specification. All time was ordered to be served consecutively. This sentence was journalized on October 14, 1997. On October 16, 1997, upon states motion, the trial court re-sentenced defendant-appellant to life in prison plus three years on the gun specification on count one, ten years in prison plus three years on the gun specification on count two and one year plus three years on the gun specification on count three. Counts one and two were ordered to be served concurrently. Count three was ordered to be served consecutively to count two.
On November 5, 1997, defendant-appellant filed a timely notice of appeal from the judgment and sentence of the trial court.
Defendant-appellant's first assignment of error states:
 I. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT ALLOWED HIS CONVICTION TO STAND AS AN AIDER AND ABETTOR WHEN THE PRINCIPAL OFFENDER AT THIS JOINT TRIAL WAS FOUND NOT GUILTY.
Defendant-appellant argues, through his first assignment of error, that he was entitled to a judgment of acquittal based upon the fact that his co-defendant, the alleged shooter, was found not guilty of all indicted charges. It is defendant-appellant's position that he could not be convicted as an aider and abettor when the alleged principal offender has been acquitted of the same charges.
Defendant-appellant relies mainly on State v. Hirsch (1956),101 Ohio App. 425, 131 N.E.2d 419, in which this court determined as follows:
 We are quite aware that in separate trials of codefendants charged with participation in the same crime, verdicts need not be consistent. It is likewise true that, where issues of identity and participation an a criminal act are presented in the same trial of two or more codefendants, a verdict of guilty as to one co-defendant will not support a claim of an inconsistent verdict. But where there is but one issue to be decided by the jury, that is, whether a security sold (the sale of which is admitted by the appellant) was one coming within the provisions of the Blue Sky Law, a verdict of one defendant not guilty and a co-defendant guilty when tried together on the same evidence, where the defendant found not guilty was the owner of the property and the one held guilty was charged as an aider and abettor, is inconsistent and must be set aside.
 This identical question was presented in the case of State v. Nowak, 16 C.C. (N.S.), 596, 27 C.D., 629, where the defendant was convicted as an aider and abettor of a special constable on a charge of extortion, and the special constable found not guilty in the same trial. The court held that an aider and abettor cannot be convicted in the same proceeding and by the same jury which acquits the principal.
Id. at 431-432.
This court has revisited this issue on a number of occasions including the case of State v. Hurt (Oct. 11, 1979), Cuyahoga App. No. 39389, unreported. In Hurt, the defendant-appellant's codefendants robbed three people at a gas station with a gun. Defendant-appellant drove the getaway car. At trial, the jury acquitted defendant-appellant of three counts of aggravated robbery, but convicted him on the lesser included offense of robbery. The co-defendants were convicted of aggravated robbery. On appeal, defendant-appellant maintained that the verdict against him as an aider and abettor must be set aside in light of the fact that the three principle offenders were convicted of aggravated robbery and the verdicts were, therefore, inconsistent.
The Hurt court concluded that in a case where the identity, participation or degree of participation of a co-defendant is at issue, there is no requirement that the verdicts as to the other co-defendants be consistent. The Hurt court concluded that such a situation was distinguishable from the Hirsch decision since, in Hirsch:
 The courts decision requiring consistent verdicts rested on the fact that the jury had just one issue to decide, i.e., whether or not the security sold fell within the coverage of the Blue Sky Laws. The court clearly distinguished the case where a codefendants identity, participation, or degree of participation, was at issue.
Id. at 3.
In the case herein, defendant-appellant's degree of participation in the indicted offenses, as well as the identity of the alleged shooter, were clearly issues in dispute at trial. Defendant-appellant maintained that he had been at the bar on the night of the shooting, but denied any involvement whatsoever in the murder. The co-defendant denied being at the bar on the night of the shooting and similarly denied that he was the shooter. Under the circumstances presented, the verdicts returned by the jury were not inconsistent since the fact finder could easily have determined that defendant-appellant had given the shooter the weapon used to kill Raymond Harris. The fact that the jury did not believe that the co-defendant had been the shooter does not, in any way, exonerate defendant-appellant or lessen his degree of participation in the indicted offenses.
For the foregoing reasons, defendant-appellant's first assignment of error is not well taken.
Defendant-appellant's second assignment of error states:
 II. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO GRANT A NEW TRIAL TO DEFENDANT BECAUSE OF SUPPRESSION OF EXCULPATORY EVIDENCE BY THE PROSECUTION.
Defendant-appellant argues, through his second assignment of error, that he was entitled to a new trial. Defendant-appellant maintains that the state suppressed exculpatory evidence in the form of a witness named Lynn Chick who would have testified that he lived near the Sir-Rah House, was awoken on the night of the murder by gunshots, looked out the window of his home and observed a person wearing dark clothing running down the street who then got into a dark colored Jeep Cherokee. It is defendant-appellant's position that the dark colored Jeep Cherokee was driven by Jerry Wilder and the individual running down the street was Ronald Gunter. Defendant-appellant contends that this testimony would have supported the defense theory that Wilder and co-defendant Ronald Gunter planned the robbery and would have called into question Wilder's credibility as a witness.
The state maintains that it did provide a witness list to the defense which included the name of Lynn Chick, 16316 Lotus Drive; however, that name was inadvertently misspelled as Glenn Cheeks. The state maintains further that defendant-appellant has failed to demonstrate that the alleged testimony of Chick was exculpatory in any manner.
Crim.R. 33 states in pertinent part:
 (A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights.
 (1) Irregularity in the proceedings, or in any order or ruling of the court, or abuse of discretion by the court, because of which the defendant was prevented from having a fair trial;
 (2) Misconduct of the jury, prosecuting attorney, or the witnesses of the state;
 (3) Accident or surprise which ordinary prudence could not have guarded against * * *
 (6) When new evidence material to the defense is discovered, which the defendant could not with reasonable diligence have discovered and produced at the trial. When a motion for a new trial is made upon the ground of newly discovered evidence, the defendant must produce at the hearing on the motion, in support thereof, the affidavits of the witnesses by whom such evidence is expected to be given, and if time is required by the defendant to procure such affidavits, the court must postpone the hearing of the motion for such length of time as is reasonable under all the circumstances of the case. The prosecuting attorney may produce affidavits or other evidence to impeach the affidavits of such witnesses.
A trial court's decision to grant or deny a motion for a new trial is not subject to reversal on appeal absent an abuse of discretion. State v. Schiebel (1990), 55 Ohio St.3d 71,564 N.E.2d 54, syllabus. An abuse of discretion exists where the trial court record demonstrates that the courts attitude was unreasonable, arbitrary or unconscionable. State v. Montgomery (1991), 61 Ohio St.3d 410, 413, 575 N.E.2d 167; State v. Adams (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144. The discretionary decision to grant a motion for a new trial is an extraordinary measure which should be used only when the evidence presented weighs heavily in favor of the moving party. State v. Otten (1986), 33 Ohio App.3d 339, 340, 515 N.E.2d 1009; State v. Wilson (Dec. 3, 1998), Cuyahoga App. No. 72165, unreported.
In the case sub judice, a review of the record demonstrates that the state informed defendant-appellant, through the discovery process, that a possible witness resided at 16316 Lotus Drive named Glenn Cheeks. While the name was misspelled, the state provided the defense the proper address thereby providing defendant-appellant's counsel the opportunity to locate and interview the proposed witness prior to trial and determine if that witnesss testimony would be beneficial to the case. Defendant-appellant has failed to demonstrate how the misspelling prevented such a determination. In addition, defendant-appellant has failed to properly demonstrate that the proposed testimony of Lynn Chick was, in fact, exculpatory as required by Crim.R. 33. Accordingly, this court cannot now say that the trial courts decision to deny defendant-appellant's motion for a new trial constituted an abuse of discretion. See City of Shaker Heights v. Ali M. Al-Gureshi (April 16, 1998), Cuyahoga App. No. 72562, unreported.
Defendant-appellant's second assignment of error is not well taken.
Defendant-appellant's third assignment of error states:
 III. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN HE WAS NOT GRANTED A SEPARATE TRIAL.
Defendant-appellant maintains, through his third assignment of error, that the trial court erred in denying his motion for a separate trial. Specifically, defendant-appellant argues that he and the co-defendant Ronald Gunter presented mutually inconsistent defenses and Gunter's defense implicated defendant-appellant in the murder. It is defendant-appellant's position that, by trying his case along with that of his co-defendant, the trial court clearly deprived defendant-appellant of a fair trial.
Crim.R. 8 (B) states:
 (B) Joinder of defendants. Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct. Such defendants may be charged in one or more counts together or separately, and all of the defendants need not be charged in each count.
Pursuant to R.C. 2945.13, multiple defendants charged in the same indictment shall be tried jointly. This section states:
 When two or more persons are jointly indicted for a felony, except a capital offense, they shall be tried jointly unless the court, for good cause shown on application therefore by the prosecuting attorney or one or more of said defendants, orders one or more of said defendants to be tried separately.
Joinder of defendants is the rule rather than the exception and the burden is on the defendant to establish any resulting prejudice. State v. Potter (April 16, 1998), Cuyahoga App. No. 72015, unreported. Pursuant to R.C. 2945.13, two jointly indicted persons shall be tried together unless the prosecutor or one of the defendants applies for separate trials and shows good cause. The burden of establishing good cause is on the defendant requesting a separate trial and the granting or denial of such separate trial request rests within the sound discretion of the trial court. State v. Dingus (1970), 26 Ohio App.2d 131,269 N.E.2d 923; State v. Perod (1968), 15 Ohio App.2d 115,239 N.E.2d 100.
Here, defendant-appellant relies mainly upon the United States Supreme Court case of Bruton v. United States, 391 U.S. 123
(1968), in which two suspects were charged with and convicted of armed postal robbery. During trial, evidence was presented that one defendant who did not testify at trial made an oral confession during one of the interrogations in which he implicated his co-defendant. The Supreme Court determined that it was constitutional error to try one defendant where the jury was presented with a non-testifying co-defendants statement implicating another defendant even where the trial court instructed the jury to only consider the confession as it related to the non-testifying co-defendant that allegedly gave the confession.
In this instance, the trial court was not dealing with such a situation. The two indicted co-defendants did not confess to their involvement in the murder at any time during the proceedings. Each defendant maintained that they had no involvement in the murder of Raymond Harris. In addition, defendant-appellant had the opportunity to cross-examine Ronald Gunter at length as to Gunter's statement that defendant-appellant and his brother had actually committed the murder. Given the circumstances presented herein, it is apparent that defendant-appellant has not demonstrated good cause for the separate trial nor has he demonstrated any prejudice from the denial of his motion.
A review of the record demonstrates further that the trial court adequately instructed the jury regarding the presence of multiple defendants and instructed the jury that it must separately consider the evidence applicable to each defendant as though that defendant was being separately tried. A presumption always exists that the jury has followed the instructions given to it by the trial court. Pang v. Minch (1990), 53 Ohio St.3d 186,559 N.E.2d 1313, paragraph four of the syllabus; Potter, supra.
In light of the fact that defendant-appellant failed to demonstrate that he suffered any prejudice as a result of the joint trial, this court finds that the trial court did not err in denying defendant-appellant's motion for a separate trial.
Defendant-appellant's third assignment of error is not well taken.
Defendant-appellant's fourth assignment of error states:
 IV. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT OVERRULED DEFENDANT'S MOTION CONCERNING HIS PRIOR CONVICTION AND THEREAFTER IMPROPERLY PERMITTED THE STATE TO PRESENT EVIDENCE ON THE PRIOR CONVICTION AFTER BOTH SIDES RESTED.
Defendant-appellant argues, through his fourth assignment of error, that the trial court erred by overruling his motion for a separate hearing on his prior conviction as it related to the third count of the indictment, having a weapon under disability, and then reopening the case for the limited purpose of allowing evidence of his prior conviction to be submitted to the jury. It is defendant-appellant's position that he was prejudiced by the trial courts actions to the point where a fair trial was not possible.
Defendant-appellant relies principally upon the United States Supreme Court case of Old Chief v. United States (1997),519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 in which a majority of the Supreme Court found, in a sharply divided 5-4 decision, that the trial court abused its discretion by refusing to accept a stipulation regarding a prior offense which excluded evidence concerning the name and nature of the prior conviction. The defendant in Old Chief offered to stipulate that he had a prior felony conviction but requested that the prosecution be prohibited from revealing the name and nature of the conviction to the jury due to the danger of unfair prejudice from the evidence substantially outweighing its probative value. The trial court refused the stipulation and allowed the prosecution to introduce a judgment entry which reflected the name and the nature of the defendants prior conviction. The Supreme Court reasoned that the trial court erred since:
 The issue is not whether concrete details of the prior crime should come to the jurors attention but whether the name or general character of that crime is to be disclosed. Congress, however, has made it plain that distinctions among general felonies do not count for this purpose; the fact of the qualifying conviction is alone what matters under the statute. "A defendant falls within the category simply by virtue of past conviction for any [qualifying] crime ranging from possession of short lobsters, [citation omitted], to the most aggravated murder." [citation omitted]. The most the jury needs to know is that the conviction admitted by the defendant falls within the class of crimes that Congress thought should bar a convict from possessing a gun * * *.
Id. at 655. The majority determined further that the proposed stipulation provided a suitable evidentiary alternative that would have been not merely relevant, but conclusive evidence of the prior conviction element of the indicted offense.
A review of the record reveals that defendant-appellant initially sought to prohibit the prosecution from telling the jury about a prior drug trafficking conviction set forth in the third count of the indictment as an essential element of the offense of having a weapon under disability. Defendant-appellant requested, in the alternative, that the jury only be told that he had a prior conviction necessary to satisfy the elements of the indicted offense. The trial court denied defendant-appellant's request.
At the close of all the evidence, defendant-appellant maintained that he had not stipulated to the prior conviction set forth in the indictment even though the state and the trial court believed that he had. As a consequence, the trial court reopened the case for the limited purpose of allowing the state to submit evidence relating to the prior conviction of defendant-appellant. Defendant-appellant maintains that this was improper in light of the fact that, after the trial court decided to reopen the case, defendant-appellant agreed off the record to stipulate.
In the case sub judice, it is apparent that the prior drug trafficking conviction is an essential element of the indicted offense of having a weapon under disability. Therefore, the state was required to prove the prior conviction beyond a reasonable doubt in order to prove the offense itself. See State v. Berger (Feb. 19, 1998), Cuyahoga App. No. 71618, unreported; State v. Adams (1995), 106 Ohio App.3d 139, 665 N.E.2d 700. Accordingly, unlike Old Chief, the trial court was not presented with an adequate evidentiary alternative that would have satisfied the prior conviction element within the offense of having a weapon while under disability. See State v. Russell (Nov. 9, 1998), Butler App. No. CA98-02-018. For the foregoing reasons, this court finds that the trial court properly overruled defendant-appellant's motion for a separate hearing on his prior conviction.
Similarly, given defendant-appellant's contradictory statements with regard to the prior conviction itself, the trial court was left with no alternative, but to allow the state a limited opportunity to present the evidence necessary to establish the prior conviction and, therefore, an essential element of the offense itself.[1] Under the present factual scenario, this court finds that the trial court did not err in allowing evidence of the name and the nature of defendant-appellant's prior conviction as the decision was not unreasonable, arbitrary or unconscionable.
Defendant-appellant's fourth assignment of error is not well taken.
Defendant-appellant's fifth assignment of error states:
 V. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO SUPPRESS EVIDENCE OBTAINED AS A RESULT OF A SEARCH WARRANT.
Defendant-appellant contends that his motion to suppress evidence obtained as a result of the search of his residence should have been granted. It is defendant-appellant's position that the search warrant in question was constitutionally defective since it was a general warrant which lacked the requisite probable cause to search his home, the warrant was based upon anonymous information which, in itself, was constitutionally insufficient and the warrant was overly broad in that it failed to allege, with reasonable particularity, the types of evidence to be seized.
In Illinois v. Gates (1983), 462 U.S. 213, 103 S.Ct. 2317,76 L.Ed.2d 527, the United States Supreme Court instructed magistrates to employ a totality of the circumstances approach in assessing whether probable cause exists to issue a search warrant. The magistrate is:
 [T]o make a practical, common sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a "substantial basis for * * * concluding" that probable cause existed. Jones v. United States, 362 U.S., at 271.
Id. at 238-239. A reviewing court does not conduct a de novo review, but must accord great deference to the magistrates determination of probable cause. If the magistrate had a substantial basis for concluding that a search warrant would uncover evidence of wrongdoing, the requirements of the Fourth Amendment have been satisfied. Id. at 236. See, also, State v. Smith (Aug. 21, 1997). Cuyahoga App. No. 70855., unreported.
The validity of the search warrant must be determined solely from the contents of the affidavit. State v. Yanowitz (1980),67 Ohio App.2d 141, 144, 426 N.E.2d 190. An appellate court may draw reasonable, common sense inferences from the facts alleged in the supporting affidavit. State v. Bean (1983), 13 Ohio App.3d 69,72, 468 N.E.2d 146. However, other facts beyond those in the affidavit may not be inferred as gap-fillers to bolster a determination of probable cause. Id. at 73, 468 N.E.2d 146; Smith, supra.
Defendant-appellant initially contends that the search warrant was not based upon valid probable cause since there was nothing contained within the warrant or the affidavit to indicate that evidence of the crime would be located at the specific place to be searched. This contention is unsupported by the record in light of the fact that the warrant itself was based upon information gathered from two separate sources that both indicated the extent of defendant-appellant's involvement in the crime. The second source, Kenneth Bailey, also indicated the location at defendant-appellant's residence where he believed a 9 millimeter handgun could be found. Clearly, this satisfies the required showing of probable cause for the underlying warrant. See State v. Wright (June 27, 1996), Cuyahoga App. No. 69386. unreported.
In addition, defendant-appellant's contention that the search warrant was based upon anonymous and uncorroborated information is not supported by the record. In this instance, the police not only received an anonymous telephone call informing them that defendant-appellant and other individuals had been involved in the murder, but also received information relating to defendant-appellant's involvement in the murder from a known informant, Kenneth Bailey, who testified at trial. Clearly, the warrant was not based solely on anonymous information as defendant-appellant maintains. See State v. Smith, supra.
Defendant-appellant contends further that the search warrant was defective since it authorized a general exploratory search of the premises in question. A review of the warrant fails to support defendant-appellant's assertion. The underlying affidavit requests permission to search for:
 a 9mm handgun or any other handgun, ammunition and accessories, and/or any and all evidence tending to establish the violation of the Criminal Laws of the State of Ohio, to wit: R.C. 2903.01 et seq.
Similarly, the search warrant authorized a search for:
 any and all physical evidence of the commission of Aggravated Murder, in violation of Ohio Revised Code 2903.01, including a 9mm handgun or any other handgun, ammunition, and any and all evidence pertaining to the violation of the laws of the State of Ohio, to wit: Ohio Revised Code Chapter 2903.01 et seq.
Contrary to defendant-appellant's argument, the descriptions contained in both the affidavit and the warrant itself are sufficiently specific and are not impermissibly over-broad. State v. Wilson (March 20, 1997), Cuyahoga App. No. 69346. unreported. The warrant in this case did not authorize a general exploratory search of defendant-appellant's residence. As in Wilson, supra, defendant-appellant fails to indicate how the warrant in question could have been any more specific under the present factual circumstances. Accordingly, defendant-appellant's argument regarding the alleged general nature of the search warrant is without merit.
For the foregoing reasons, it is apparent that the trial court did not err in overruling defendant-appellant's motion to suppress evidence.
Defendant-appellant's fifth assignment of error is not well taken.
Defendant-appellant's sixth assignment of error states:
 VI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO SUPPRESS DEFENDANTS STATEMENT WHICH WAS THE PRODUCT OF AN ILLEGAL ARREST AND IN VIOLATION OF DEFENDANTS RIGHT TO COUNSEL.
Defendant-appellant argues, through his sixth assignment of error, that any statement he made to the police in connection with his arrest on January 3, 1997, should have been suppressed by the trial court. Defendant-appellant bases this contention on the following assertions: (1) any statement taken by the police was in violation of defendant-appellant's right to counsel; (2) the search of the vehicle in which defendant-appellant was a passenger was illegal; and (3) defendant-appellant was taken into custody without probable cause.
The standard of review with respect to whether the officer had adequate grounds to conduct an investigatory stop of the defendants vehicle without a warrant was stated in City of Brecksville v. Bayless (April 3, 1997), Cuyahoga App. No. 70937, unreported, at 5-6, citing State v. Velez (May 4, 1995), Cuyahoga App. No. 67595, unreported, at 3-5:
 The scope of our review on a motion to suppress was recently set forth by this court in State v. Curry (1994), 95 Ohio App.3d 93, 96, 641 N.E.2d 1172:
 "In a motion to suppress, the trial court assumes the best position to resolve questions of fact and evaluate witness credibility. State v. Clay (1973), 34 Ohio St.2d 250, 63 O.O.2d 391, 298 N.E.2d 137. A reviewing court is bound to accept those findings of fact if supported by competent, credible evidence. See State v. Scheibel (1990), 55 Ohio St.3d 71, 564 N.E.2d 54. However, without deference to the trial courts conclusion, it must be determined independently whether, as a matter of law, the facts meet the appropriate legal standard. State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908."
 In Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court held that a police officer may stop and investigate unusual behavior, even without probable cause to act, when he reasonably concludes that the individual is engaged in criminal activity. In justifying that conclusion, the officer "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." Id. at 21.
 The circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold. State v. Freeman (1980), 64 Ohio St.2d 291, 295, 414 N.E.2d 1044.
In the case at bar, a review of the record demonstrates that the arresting police officers observed an automobile with three individuals enter a high drug area and saw a male approach the car and exchange an object with a passenger in the car. When the car pulled away, the officers decided to follow the car. Soon after, the automobile under surveillance failed to stop at a stop sign. The officers then attempted to conduct an investigatory stop of the vehicle which had pulled into a private driveway. Once the car stopped, both the driver and the passenger immediately exited the car. The driver went up onto the front porch of the house and the front seat passenger fled into a backyard. The back seat passenger, who was later identified as defendant-appellant, remained seated in the car.
As one of the officers approached the vehicle, he observed the individual in the back seat "frantically trying to shove something into his front pocket." (T. 47). As defendant-appellant exited the car, a marijuana cigar fell to the ground. Upon questioning, defendant-appellant admitted to the officers that the cigar was marijuana. At that point, defendant-appellant was unable or unwilling to produce identification. The officer then ran a computer check at the scene and discovered that defendant-appellant was a named suspect in an aggravated burglary. Consequently, defendant-appellant was placed under arrest and the car towed. During an inventory search of the vehicle, the police discovered a 9 millimeter handgun under the armrest.
Clearly, the police had valid probable cause to stop the vehicle in question. Even if one were to ignore the suspected drug activity observed by the police officers, the traffic violation alone provided sufficient justification for stopping the vehicle. Dayton v. Erickson (1996), 76 Ohio St.3d 3,665 N.E.2d 1091. Once stopped, the police observed defendant-appellant acting in a suspicious manner while seated in the automobile, discovered marijuana on defendant-appellant's person and learned through a routine police records check that defendant-appellant was a suspect in another felony case. Based upon the underlying facts, it is apparent that the police investigatory stop of the vehicle and the subsequent arrest of defendant-appellant were proper.
In addition, testimony was presented to demonstrate that, once in custody, defendant-appellant failed to request an attorney even after being Mirandized by the police. Accordingly, any statements made by defendant-appellant during this time period were properly admitted into evidence by the trial court. Consequently, defendant-appellant has failed to demonstrate that any constitutional violation occurred.
Defendant-appellant's sixth assignment of error is not well taken.
Defendant-appellant's seventh assignment of error states:
 VII. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT ADMITTED INTO EVIDENCE A TOTALLY UNRELATED FIREARM BECAUSE IT SHOWED THE DEFENDANTS PROPENSITY TO CARRY A GUN.
Defendant-appellant argues that the trial court erred by admitting into evidence a 9 millimeter handgun discovered during the search of the vehicle in which defendant-appellant was arrested. The weapon was not the murder weapon. It is defendant-appellant's position that the gun was improperly introduced for the sole purpose of showing defendant-appellant's propensity to carry a gun.
Evid.R. 404 (B) states:
 (B) Other crimes, wrongs or acts. Evidence of the other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
In State v. Wickline (1990), 50 Ohio St.3d 114, 120, the Ohio Supreme Court determined that, although Evid.R. 404 (B) generally prohibits evidence of other crimes, wrongs or bad acts to establish criminal propensity, evidence of gun ownership was admissible to show the defendant had struck one victim with a gun prior to the murder. The court determined that the evidence of the appellant's gun ownership was relevant as it corroborated testimony as to the assault on the victim with a gun prior to the murder.
In the case sub judice, the victim was shot with a 9 millimeter weapon similar to the weapon introduced into evidence by the prosecution. The trial court determined that this exhibit, along with the 9 millimeter ammunition discovered at defendant-appellant's residence, was reasonably related to the indicted offenses to demonstrate defendant-appellant's opportunity and knowledge to commit the crimes charged. We find that, in this matter, it was error for the trial court to admit the weapon. However, due to the overwhelming evidence presented against defendant-appellant, such admission constitutes harmless error. See State v. Mays (Oct. 22, 1998), Cuyahoga App. No. 73376, unreported.
Defendant-appellant's seventh assignment of error is not well taken.
Defendant-appellant's eighth assignment of error states:
 VIII. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT ALLOWED A HEARSAY STATEMENT, TOTALLY UNCORROBORATED, TO BE OFFERED INTO EVIDENCE BY CO-DEFENDANT RONALD GUNTER.
It is defendant-appellant's position that the trial court erred by allowing co-defendant Ronald Gunter to testify as to a statement allegedly made by defendant-appellant in which defendant-appellant admitted to Gunter his participation in the murder. Defendant-appellant maintains that the disputed statement was improperly admitted as a statement against interest without the necessary corroborating circumstances.
Evid.R. 804 (B) (3) provides:
 (3) Statement against interest. A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clear indicate the trustworthiness of the statement.
The determination as to whether corroborating circumstances are sufficient to admit a statement against penal interest rests within the sound discretion of the trial court. State v. Taylor (Oct. 29, 1998), Cuyahoga App. No. 71396, unreported; citing State v. Landrum (1990), 53 Ohio St.3d 107, 114, 559 N.E.2d 710, certiorari denied (1991), 498 U.S. 1127, 111 S.Ct. 1092,112 L.Ed.2d 1196; State v. Patterson (1996), 110 Ohio App.3d 264,673 N.E.2d 1001. Such determination will not be reversed absent a showing of an abuse of discretion. State v. Branham (1995),104 Ohio App.3d 355, 360.
In the case herein, sufficient corroborating circumstances were present in the form of the testimony of both Jerry Wilder and Kenneth Bailey. Wilder testified that he saw defendant-appellant hand the shooter the murder weapon. Similarly, Bailey maintained that defendant-appellant had admitted providing the shooter with the murder weapon. In fact, Bailey's account is factually similar to that of Ronald Gunter except as to the identity of the shooter. For the foregoing reasons, it is apparent that the trial court did not err by admitting Gunter's statement as a statement against interest pursuant to Evid.R. 804 (B) (3).
Defendant-appellant's eighth assignment of error is not well taken.
Defendant-appellant's ninth assignment of error states:
 IX. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT OF CROSS-EXAMINATION WHEN THE COURT RESTRICTED CROSS-EXAMINATION AND COMMENTED UPON THE EVIDENCE.
Defendant-appellant maintains that the trial court improperly limited the scope of cross-examination and improperly commented upon certain evidence, thereby depriving him of his constitutional right to a fair trial. Specifically, defendant-appellant refers to the following exchange between defense counsel and the trial court:
 Q. Didn't you testify that you were not scared, you were not afraid?
Mr. Walsh: Objection.
 The Court: Sustained. If you want to cite his testimony, cite it accurately, Mr. Mancino.
 Mr. Mancino: Well, that's what my notes show that, your Honor.
 The Court: Get the transcript then, cause my notes reflect differently.
(T. 555). Defendant-appellant also complains that the trial courts sustained objections during Jerry Wilder's testimony regarding whether he cashed a check at the Money Exchange and where he went after the Money Exchange were also improper.
Evid.R. 611 (B) states: "Cross-examination shall be permitted on all relevant matters and matters affecting credibility. Evid.R. 616 states: "bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." It is well established that a cross-examiner may ask a question if the examiner has a good faith belief that a factual predicate for the question exists. State v. Williams (1977), 51 Ohio St.2d 112; State v. Gilliard (1988), 40 Ohio St.3d 226.
It is well established that the trial court has broad discretion in imposing limits on the scope of cross-examination. State v. Cobb (1991), 81 Ohio App.3d 179, 183, 610 N.E.2d 1009. The issue of whether testimony is relevant or irrelevant is best determined by the trial judge. In balancing the probative value against the danger of unfair prejudice, the trial court is vested with broad discretion, and an appellate court should not interfere absent an abuse of discretion. State v. Wells (March 13, 1997), Cuyahoga App. No. 70534, unreported. The term abuse of discretion "connotes more than an error in law or judgment; it implies that the courts attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983), 5 Ohio St.3d 217,219; State v. Cobb, supra.
In the case herein, a review of the record fails to support defendant-appellant's contention that the trial court improperly limited the scope of cross-examination or improperly commented upon the evidence in any way. The disputed comments b: the trial court were merely an attempt by the trial judge to direct defense counsel to relevant portions of prior testimony of which the trial court possessed direct knowledge. Similarly, the trial courts sustained objections fail to rise to the level necessary for a finding of an abuse of discretion. See, generally, State v. Dee (Dec. 31, 1997), Trumbull App. No. 95-T-5371, unreported, at 11.
Defendant-appellant's ninth assignment of error is not well taken.
Defendant-appellant's tenth assignment of error states:
 X. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT REFUSED TO STRIKE THE TESTIMONY OF A DETECTIVE WHO HAD DESTROYED HIS NOTES OF AN INTERVIEW WITH DEFENDANT.
Defendant-appellant maintains that the trial court should have stricken the testimony of Detective Robert Matuszny. He bases this argument on the fact that Detective Matuszny admitted that he had taken notes of his interview with defendant-appellant and then, at a later point in time, threw the notes of the interview away. Defendant-appellant attempts to analogize this situation with a situation where evidence directly related to the indicted offense or offenses is lost or destroyed.
Pursuant to Crim.R. 16 (B) (1) (g), notes made by a prosecutor or police officer during an interview conducted in connection with an investigation or prosecution of a case are not subject to an in camera inspection within the intent and meaning of the rule. In State v. Washington (1978), 56 Ohio App.2d 129, 133,381 N.E.2d 1142, the court determined that " * * * the word written in this context does not refer to notes made by a detective talking to a witness during an investigation. The word written refers to a writing made by a witness or somebody else at the witness direction." Id. at 132-133, 381 N.E.2d 1142. See, also, State v. Henry (1987), 37 Ohio App.3d 3, 523 N.E.2d 877.
Clearly, since defendant-appellant was not entitled to the notes made by Detective Matuszny pursuant to Crim.R. 16, the trial court did not err in refusing to grant defendant-appellant's motion to strike Detective Matuszny's testimony. See State v. Watts (June 4, 1998), Cuyahoga App. No. 72863, unreported; State v. Fontes (Nov. 11, 1998), Union App. No. 14-97-45, unreported.
Defendant-appellant's tenth assignment of error is not well taken.
Defendant-appellant's eleventh assignment of error states:
 XI. DEFENDANT-APPELLANT WAS DENIED A FAIR TRIAL WHEN THE COURT ALLOWED EVIDENCE CONCERNING ALLEGED THREATS MADE BY BURK JORDAN TO WITNESSES.
Defendant-appellant maintains that the trial court erred in allowing testimony into evidence of alleged threats made by Burk Jordan, defendant-appellant's brother, to states witness Jerry Wilder. It is defendant-appellant's position that this testimony was irrelevant, immaterial and prejudicial to his case.
A review of the record demonstrates that the disputed testimony was elicited by defense counsel for co-defendant Ronald Gunter. Gunter's defense was that he did not commit the murder, but defendant-appellant, his brother Burk Jordan and others actually committed the crime. Therefore, testimony relating to threats allegedly made by defendant-appellant's brother to a state witness were not irrelevant nor immaterial. Under the facts of the instant case, the trial courts determination that the probative value of the disputed testimony outweighed its prejudicial effect did not constitute an abuse of discretion and, therefore, will not be reversed on appeal. State v. Combs (1991),62 Ohio St.3d 278.
Defendant-appellant's eleventh assignment of error is not well taken.
Defendant-appellant's twelfth assignment of error states:
 XII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT WOULD NOT ALLOW PROPER ARGUMENT BY DEFENSE COUNSEL.
Defendant-appellant's twelfth assignment of error is based upon two separate instances during the trial where a trial court ruling allegedly deprived defendant-appellant of a fair trial. The first such instance was during defendant-appellant's closing argument during which defendant-appellant maintains that he was improperly prevented from referring to Jerry Wilder's pending criminal cases. The second instance occurred when defendant-appellant unsuccessfully attempted to argue that he did not flee the scene of the murder because he had no consciousness of guilt.
The trial courts control over the latitude afforded counsel during closing arguments is discretionary and will not be overturned on appeal absent an abuse of discretion. State v. Walters (Sept. 30, 1998), Medina App. No. 2775-M, unreported, citing Pang v. Minch (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313, paragraph three of the syllabus. To constitute an abuse of discretion, the trial courts action must be more than an error of law or judgment; it must be so violative of fact and logic as to demonstrate perversity of will. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83, 87, 482 N.E.2d 1248. It must be unreasonable, arbitrary or unconscionable. State ex rel. Grady v. State Emp. Relations Bd. (1997), 78 Ohio St.3d 181, 183,677 N.E.2d 343.
In the case sub judice, a review of the two instances that form the basis of defendant-appellant's twelfth assignment of error demonstrates that no such abuse of discretion occurred in this case. While it is true that counsel is generally afforded wide latitude by the trial court during closing arguments, that latitude is not unlimited. Kubiszak v. Rini's Supermarket (1991),77 Ohio App.3d 679, 688, 603 N.E.2d 308. Herein, the trial courts restriction of defendant-appellant's argument regarding the alleged ongoing criminal cases of one of the states witnesses, as well as the restriction upon the argument that absence of flight demonstrates lack of consciousness of guilt on the part of defendant-appellant, were not unreasonable, arbitrary or unconscionable.
Defendant-appellant's twelfth assignment of error is not well taken.
Defendant-appellant's thirteenth assignment of error states:
 XIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW AND A FAIR TRIAL BECAUSE OF IMPROPER QUESTIONING BY THE PROSECUTION.
Defendant-appellant maintains that prosecutorial misconduct occurred during closing argument which deprived him of the right to a fair trial. Specifically, defendant-appellant refers to the following instances of alleged misconduct:
 1) The state maintained that defense witness Carlton Gilmore lied thereby improperly injecting his opinion into the trial;
 2) the state improperly appealed to the passion and prejudice of the jury by asking them to "speak for the victim." (T. 1164);
 3) the state maintained that witnesses had been intimidated and were therefore not called to testify; and
 4) the state improperly asked the jury to not "let these, don't even want to call them people, get away with this. (T. 1176).
Generally, conduct of a prosecuting attorney at trial shall not be grounds for reversal unless the conduct deprives the defendant of a fair trial. State v. Apanovitch (1987), 33 Ohio St.3d 19; State v. Papp (1978), 64 Ohio App.2d 203. An appellant is entitled to a new trial only when a prosecutor asks improper questions or makes improper remarks and those questions or remarks substantially prejudiced appellant. State v. Smith (1984), 14 Ohio St.3d 13. In analyzing whether an appellant was deprived of a fair trial, an appellate court must determine whether, absent the improper questions or remarks, the jury would have found the appellant guilty. State v. Maurer (1984), 15 Ohio St.3d 239,266; State v. Dixon (March 13, 1997), Cuyahoga App. No. 68338, unreported. The touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor. Smith v. Phillips (1982), 455 U.S. 209. 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78. 87.
Notwithstanding defendant-appellant s contentions, this court does not feel that the prosecutors statements during closing argument can be characterized in any way as misconduct which deprived defendant-appellant of his constitutional right to a fair trial. As a general rule, a prosecutor is entitled to a certain degree of latitude during closing argument. State v. Brown (1988). 38 Ohio St.3d 305; State v. Liberatore (1982),69 Ohio St.2d 583, 589. Moreover, closing arguments must be viewed in their entirety to determine whether the disputed remarks were prejudicial. State v. Mann (1993), 93 Ohio App.3d 301. 312; State v. Burgun (1978), 56 Ohio St.2d 354.
In this case, a review of the prosecutors closing argument in its entirety discloses no prejudice to any substantial rights of defendant-appellant. While it is true that the prosecution should refrain from characterizing defense witnesses as untruthful and attempting to appeal to the passion and prejudice of the jury, it is apparent from the evidence that, absent the prosecutors comments in this case, the jury would have found defendant-appellant guilty of the indicted offenses. See State v. Vrona (1988), 47 Ohio App.3d 145, 547 N.E.2d 1189; State v. Springfield (1992), 82 Ohio App.3d 705.
For the foregoing reasons, this court finds that defendant-appellant was not deprived of his constitutional right to a fair trial and, therefore, his thirteenth assignment of error is not well taken.
Defendant-appellant's fourteenth assignment of error states:
 XIV. DEFENDANT WAS DENIED A FAIR TRIAL WHEN THE COURT PRECLUDED DEFENDANT FROM ARGUING HIS LACK OF GUILT BY REASON OF NOT FLEEING THE SCENE AFTER THE COURT RULED IT WOULD NOT GIVE A JURY INSTRUCTION BUT WOULD ALLOW COUNSEL TO ARGUE THAT ISSUE.
Defendant-appellant argues that the trial court should have instructed the jury that innocence may be inferred from the absence of flight. Defendant-appellant bases this argument upon the fact that a jury instruction was given which stated that flight from the crime scene may raise the presumption of guilt. It is defendant-appellant's position that he should have been entitled to the opposite jury instruction since the evidence demonstrated that he did not flee the scene.
This issue was addressed and rejected by the Hamilton County Court of Appeals in State v. Simms (1984), 13 Ohio App.3d 287,289. In Simms, the court found:
 The first requested instruction would have charged the jury that they could consider the absence of flight on the part of appellant as tending to prove appellant's "lack of consciousness of guilt." We are unaware of any authority in Ohio holding that "absence of flight" is a proper jury instruction and appellant has not cited such authority. We find, therefore, that the trial court did not abuse its discretion in refusing to give the "absence of flight instruction."
Pursuant to the First District Appellate Courts holding in Simms, supra, this court finds that the trial court did not err in failing to give a jury instruction regarding the "absence of flight."
Defendant-appellant's fourteenth assignment of error is not well taken.
Defendant-appellant's fifteenth assignment of error states:
 XV. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT DILUTED A REQUIREMENT THAT THE STATE PROVE A SPECIFIC INTENT TO CAUSE THE DEATH OF ANOTHER.
Defendant-appellant argues, through his fifteenth assignment of error, that the trial court improperly instructed the jury. Specifically, defendant-appellant maintains that, in its instruction to the jury on the aggravated murder charge, the trial court informed the jury that it must be established that defendant-appellant had the specific intent to cause the death of another; i.e., Raymond Harris. The court then proceeded, over defense objection, to instruct the jury that:
 When the gist of the offense is a prohibition against conduct of a certain nature, a person acts purposely if his specific intention was to engage in the conduct of that nature regardless of what he may have intended to accomplish by his conduct.
(T. 1191-1192). It is defendant-appellant's position that the additional jury instruction constitutes prejudicial error since it improperly diluted the specific intent requirement.
This court recently addressed a similar argument in State v. Parker (April 9, 1998), Cuyahoga App. No. 71474, unreported, in which the court stated as follows:
 * * * defendant asserts that the trial court erred by instructing the jury that defendant was "responsible for the natural and foreseeable consequences that follow" from his actions, as this instruction permitted the jury to convict defendant of aggravated murder on a finding of less than specific intent.
* * *
 With regard to the substantive merit of this claim, this court in State v. Jacks (1989), 63 Ohio App.3d 200, 205, 578 N.E.2d 512, condemned use of the foreseeability instruction where specific intent must be proven by the state as it may undercut the mens rea for murder. However the supreme court has determined that the jury instructions must be viewed as a whole and will not be reversed if they, in their entirety, "make clear that the jury must find purpose to kill in order to convict." State v. Phillips (1995), 74 Ohio St.3d 72, 100, 656 N.E.2d 643; quoting State v. Burchfield (1993), 66 Ohio St.3d 261, 262-263, 611 N.E.2d 819.
Id. at 5.
This courts reasoning in Parker, supra, is applicable to the instant case. The instructions, as a whole, clearly informed the jury that it had to find defendant-appellant acted with the specific intent to kill Raymond Harris in order to find defendant-appellant guilty of aggravated murder. The trial court instructed the jury that intent to kill is an essential element of the crime of aggravated murder. A review of the entire charge demonstrates that the trial court adequately conveyed to the jury that it had to find defendant-appellant had the specific intent to kill. In addition, defendant-appellant has failed to demonstrate that the outcome of the trial would have been different, but for the disputed instruction. See State v. Jenkins (Dec. 24, 1997), Cuyahoga App. No. 68961, unreported.
Accordingly, defendant-appellant's fifteenth assignment of error is not well taken.
Defendant-appellant's sixteenth assignment of error states:
 XVI. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT UNCONSTITUTIONALLY INFORMED THE JURY CONCERNING A PRESUMPTION.
Defendant-appellant contends that the following jury instruction concerning the proof of a purpose to cause death was in error:
 If a wound is inflicted upon a person with a deadly weapon in a manner calculated to destroy life, the purpose to cause the death may be inferred from the use of the weapon.[2]
(T. 1192). It is defendant-appellant's position that the instruction is contrary to R.C. 2903.01 (D) and that the instruction created an unconstitutional mandatory presumption.
In State v. Gimenez (Sept. 4, 1997), Cuyahoga App. No. 71190, unreported, this court dealt with a similar instruction as the instruction at issue in this case. This court determined that the instruction was not improper:
 In State v. Montgomery (1991, 61 Ohio St.3d 410, 575 N.E.2d 167, the court upheld the validity of a similar instruction. The court found that the words "may be" modified the word "inferred" to such an extent that "[n]o reasonable jury would have felt compelled to presume intent on the basis of the trial courts instruction." Id. at 415, 575 N.E.2d 167; see also State v. Stoudemire (February 27, 1997), Cuyahoga App. No. 69335, unreported.
Clearly, in the instant case, the trial court did not err in giving the disputed instruction to the jury. This is particularly true in light of the testimony of Jerry Wilder and Kenneth Bailey which enabled the jury to infer that defendant-appellant had planned the use of a deadly weapon in a manner calculated to destroy life.
Accordingly, defendant-appellant's sixteenth assignment of error is not well taken.
Defendant-appellant's seventeenth assignment of error states:
 XVII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE COURT OVERRULED HIS MOTION FOR JUDGMENT OF ACQUITTAL.
Defendant-appellant maintains that the trial court erred in overruling his motion for judgment of acquittal pursuant to Crim.R. 29. Specifically, defendant-appellant argues that there is no evidence that he had the purpose to kill Raymond Harris.
Crim.R. 29 (A), which establishes the parameters for granting a motion for judgment of acquittal, provides in pertinent part:
 * * * The court on a motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of each offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the states case.
In addition, in State v. Bridgeman (1978), 55 Ohio St.2d 261, the Supreme Court established that a trial court may not grant a Crim.R. 29 (A) motion for acquittal where the evidence adduced at trial shows that reasonable minds can reach different conclusions as to whether the elements of a charged offense have been proven beyond a reasonable doubt:
 Pursuant to Crim.R. 29 (A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.
In the case sub judice, a review of the evidence presented demonstrates that the trial court did not err by overruling defendant-appellant's motion for judgment of acquittal pursuant to Crim.R. 29. Testimony was adduced which not only implicated defendant-appellant in the planning of the robbery, but also implicated defendant-appellant as a participant in the subsequent murder. Clearly, sufficient evidence was presented by the state to overcome defendant-appellant's motion for judgment of acquittal.
Defendant-appellant's seventeenth assignment of error is not well taken.
Defendant-appellant's eighteenth assignment of error states:
 XVIII. DEFENDANT WAS DENIED DUE PROCESS OF LAW WHEN THE INDICTMENT AND BILL OF PARTICULARS ALLEGED DEFENDANT WAS A PRINCIPAL PARTICIPANT AND THE EVIDENCE DID NOT SO SHOW.
Defendant-appellant argues that the indictment and the bill of particulars alleged that he was to be prosecuted as a principal offender. Consequently, it is defendant-appellant's position that he was not given notice that he would be prosecuted as an aider and abettor.
In State v. Ensman (1991), 77 Ohio App.3d 701, 703 the Eleventh District Court of Appeals addressed this issue. The court found that:
 In the instant case, appellant was indicted for aggravated murder in terms of the principal offense. By virtue of R.C. 2923.03 (F), appellant was on notice that evidence could be presented that he was either a principal offender, or an aider and abettor. State v. Dotson (1987), 35 Ohio App.3d 135, 138, 520 N.E.2d 240, 244. Moreover, charging a defendant in the indictment as if he were a principal will sustain proof that he acted as an aider and abettor of the principal. State v. Senzarino (C.P. 1967), 10 Ohio Misc. 241, 39 O.O.2d 383, 224 N.E.2d 389; State v. Smith (Mar. 25, 1988), Allen App. No. 1-85-48, unreported, 1988 WL 32979.
Clearly, the indictment in the underlying case, as well as the bill of particulars, placed defendant-appellant on notice that he could be prosecuted as a principal or an aider and abettor under R.C. 2923.03 (F). See State v. Likely (Dec. 8, 1994), Richland App. No. 94-CA-36-2, unreported. Accordingly, defendant-appellant's eighteenth assignment of error is not well taken.
Defendant-appellant's nineteenth and final assignment of error states:
 XIX. DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS WHEN THE COURT RESENTENCED DEFENDANT.
Defendant-appellant maintains that he was improperly re-sentenced by the trial court. Specifically, defendant-appellant maintains that the trial courts initial sentence merged counts one and two, aggravated murder and aggravated robbery, respectively. This sentence was originally imposed on October 8, 1997 and journalized on October 14, 1997. Subsequently, the trial court, upon states motion, resentenced defendant-appellant separately on counts one and two and ordered that the sentences be served concurrently. The re-sentencing order was journalized on October 16, 1997. It is defendant-appellant's position that the trial courts action amounts to an improper increase in the sentence in violation of his constitutional rights. It is established law in Ohio that once execution of sentence commences, a trial court cannot amend or modify the sentence except as provided by statute. State v. Addison (1987), 40 Ohio App.3d 7, 530 N.E.2d 1335; State v. Ballard (1991), 77 Ohio App.3d 595, 597, 602 N.E.2d 1234. Moreover, an increase in the punishment subjects a defendant to double punishment for the same offense if the increase takes place after the defendants sentence has already commenced. See United States v. Benz (1931), 282 U.S. 304, 307, 51 S.Ct. 113.75 L.Ed. 354; In re Zilba (1996). 110 Ohio App.3d 258, 261,673 N.E.2d 997; State v. Hooks (June 25, 1998), Cuyahoga App. No. 73642, unreported.
In the case herein, it is apparent that the trial courts modification of defendant-appellant's sentence amounted to an increase of defendant-appellant's punishment after he had started to serve the original sentence. A review of the appearance and execution docket demonstrates that the original sentence had been imposed on October 8, 1997 and journalized on October 14, 1997. Based upon the foregoing reasons, the trial courts October 16. 1997 judgment entry modifying defendant-appellant's sentence is hereby vacated. The trial court is hereby instructed to reinstate the original sentence imposed on October 8, 1997 in which counts one and two of the indictment were merged for the purposes of sentencing.
Defendant-appellant's nineteenth and final assignment of error is well taken.
Judgment of the trial court is hereby affirmed in part, reversed in part and remanded for re-sentencing consistent with this opinion.
This cause is affirmed in part, reversed in part and remanded for re-sentencing for proceedings consistent with this opinion.
Costs to be divided equally between plaintiff-appellee and defendant-appellant.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendants conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure
 _______________________ MICHAEL J. CORRIGAN JUDGE
 PATTON. P.J. and ROCCO. J. CONCUR.
N.B. This entry is an announcement of the courts decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the courts decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1)
[1] In addition, it is clear that the doctrine of invited error applies in this instance. Under the doctrine of invited error, a party will not be permitted to take advantage of an error which he induced the trial court to make. See State v. Nievas (1997),121 Ohio App.3d 451, 456, 700 N.E.2d 339.
[2] The preferred practice is to instruct the jury that an inference drawn from the use of a deadly weapon alone is non-conclusive. However, in this case, the jury instructions must be viewed in totem. Such a review demonstrates that the issues relative to specific intent were sufficiently addressed by the trial court in its charge.